BOARD OF SUPERVISORS OF HARRISON COUNTY v. R. SEAL.

1. HIGHWAY.   *Dedication.  Acceptance.  Duty to repair.*
   Where the owner dedicates land for public use as a road or street, in order
   to constitute it such a highway as the public is under obligation to keep in
   repair, there must be an acceptance of the dedication by the constituted
   authorities.   The acceptance may be by formal adoption, or by repairing,
   or probably by long public user with the assent of the authorities.

2. SAME.   *When acceptance not essential.  Right of public.*
   But the right to adopt to public use land that has been dedicated for a high-
   way does not in all cases depend upon an acceptance by the local authorities.
   Although there may have never been an acceptance, so as to impose upon the
   public the duty to repair, yet, if in fact there has been a dedication, and in
   the estimation of the authorities the wants or convenience of the public re-
   quire the land for a highway, they may appropriate it for that purpose, and
   thus cut off the owner from retraction.

3. SAME.   *Case in judgment.*
   Public roads in this state are by statute thirty feet wide.   In this case, at a
   prospective town site, a very much wider way was dedicated for a street about
   fifty years ago; only a village was built, and it was never incorporated, and
   there was no acceptance of the dedication as made; but most of the space
   was left open, and part of it has always been used and worked as an
   ordinary road leading to the court-house.   In opening another road across
   this, a portion of the space was appropriated by the county, when the appel-
   lee, under a deed from the heir of the original owner, sued out an injunc-
   tion on the ground that he was entitled to compensation for the excess of
   space over thirty feet in width, claiming that there was no power in the
   county to accept a dedication for a highway more than thirty feet wide.
   *Held,* that he was not entitled to relief.

FROM the chancery court of Harrison county.

HON. S. EVANS, Chancellor.

The facts are stated in the opinion of the court.

*W. G. Evans, Jr.,* for appellants.

1. The chancery court had no jurisdiction.   The complainant
had a complete remedy at law.   Code 1880, §§ 826, 830 ; 54 Miss.
259.

2. This proceeding on the part of complainant, obtaining the
deed from Soria, paying taxes, and claiming to be in possession of

the land in controversy, was a mere device to get a portion of Railroad street, a public highway that has been such for many years. To close it up now would be to deprive the public of the highway enjoyed for many years, and at the same time to shut in by a strip of land all the lots fronting on this street, which lots were sold by Tegarden, the original owner, with reference to it. 1 How. (Miss.) 379 ; 39 Miss. 374 ; 48 Ib. 423 ; 50 Ib. 410 ; 52 Ib. 383 ; 55 Ib. 612.

*W. P. & J. B. Harris,* for appellee.

This case arises under the road law, code 1880, § 823. The county authorities assumed that the entire strip of land, a hundred and twenty feet wide, that was originally left for the Brandon railroad, was public property, whereas Seal claims that only thirty feet of the west side has been used as a public road, leaving a strip ninety feet wide, which he purchased from the heir of the original owner in 1879. He has claimed it since that time, and his vendors claimed it anterior to that date. This strip of ninety feet *is not public property ;* it belongs to Seal, and he has exercised all acts of ownership. He was, therefore, entitled to notice of the proceedings to *lay out* the new road across it. Mills on Em. Domain, 95, 96 *et seq.* The statute requires notice, and that ends the case, so far as it has been adjudicated by the decree appealed from.

But the proof relied on to constitute this strip of ninety feet public property by dedication fails altogether. There was not at the date of the grants relied on as *dedication* any public, as a town or village, in existence to accept a dedication, and there is no dedication to the county.

In *Tegarden* v. *McBean,* 33 Miss. 283, it was held that an understanding or agreement by a neighborhood to have a neighborhood road, and arrangements between *individuals creating easements* by contracts, or covenants in deeds, do not create public highways.

This view is borne out by cases elsewhere. *Clements* v. *West Troy,* 16 Barb. (N. Y.) 251–283 ; *Holmes* v. *Jersey City,* 1 Beasley (N. J.) 299.

The local public must accept what comes to be a charge on it.

Where plats of projected cities or extensions are brought to bear on the subject, the rule is that only so much of the ground as is actually used can be regarded as accepted.    48 Conn. 416.

Here only thirty feet has ever been used as a road, and that is conclusive against the assumptions of public property in the remainder.

The strip of ninety feet is cut up by sinks and ravines, is overgrown with bushes, and is only vacant land in an *overlanded* country.

The county has nothing to do with any rights of proprietors who have easements or *outlets* from their lots over this land.    If these proprietors *have easements which bind the owner*, they must assert them when molested.    Their existence and extent is no foundation for a claim by the *county* to the ninety feet as a dedication.    Mississippi City is not a village or town.    No dedication was made to the county, and there did not exist an organized local public to receive a dedication of streets.

Appellee was not bound to apply for damages after the location had been made without notice to him.    The remedy for wrongful appropriation of private property is by injunction.    Mills Em. Domain, § 90, and note.

COOPER, J., delivered the opinion of the court.

About fifty years ago a company called "The Mississippi City Company" procured a body of land in Harrison county, lying on the Gulf of Mexico, and laid it off into streets, blocks, and public squares.    According to the plan of the company this was to be the site of a great seaport city, and they gave to it the name of "Mississippi City."    A plat was made and filed in the office of the clerk of that county, as we infer from references made to it in certain conveyances found in the record of this cause.    A copy of that plat is in the record, and from it we learn that there were nearly three hundred squares, bounded by streets numbered from one to seventeen running east and west, and by about an equal number named for different states running north and south.    The prospective city was intersected by a street named on the map, "Rail-

road street," over which a prospective railroad was to run to a real depot building and wharf, which the company then and there built and then became insolvent. The whole property was sold under execution and bought in by one Tegarden. Railroad street as laid down on the map is shown to have been one hundred and ten or one hundred and twenty feet wide. After his purchase Tegarden sold a number of lots according to the plan of Mississippi City, several of which abutted upon Railroad street, and are described in the conveyances made as bounded by it; in one or more of the deeds it is expressly covenanted by him that Railroad street shall be left open forever, but the grantor frequently in making other conveyances reserved the right to close up other streets appearing on the map. One of the lots thus situated on Railroad street was conveyed to the county authorities of Harrison county for the site of a court-house and jail, and the same were there located and yet remain. Directly opposite the court-house and across Railroad street is the post-office, and there are several residences on lots abutting on that street. Mississippi City never became a city or even an incorporated village, in consequence of which there are no streets adopted as such by municipal authority, but the strip of land called Railroad street has always remained open except as encroached upon on the one side or the other by those who have built residences along its boundary. It has never been accepted by the county authorities as a public highway by an order entered on its minutes, but it has been occasionally worked upon as a highway by the overseers of the roads, but only at points remote from the court-house, where by reason of its passing through swampy ground, work has been necessary to keep it in repair; within the limits extending from the court-house to the point of controversy in this suit no work seems ever to have been needed, because of the sandy character of the land, and consequently none has been done. When Tegarden, the owner of the land, saw that there was but little prospect of building up a town upon his land, many of the streets laid down in the plat were closed up, and the land was sold in lots, laid off without regard to the location of the numerous streets. Some evidence appears in the record tending to show a

purpose on his part of cutting down the width of "Railroad street" to thirty feet, the limit of a country road.  The extent of the evidence is that he claimed the right to do so, but it is not shown that those to whom he had conveyed lots situated on the street yielded to his claim, or that he ever attempted to take actual possession of the excess over thirty feet.  In the year 1879 the heir-at-law of Tegarden conveyed Railroad street, or so much of it as exceeded thirty feet in width, by metes and bounds to the appellee, who has had it assessed as his property and paid taxes on it since that time.  The board of supervisors of Harrison county have recently caused a public road to be laid out which crosses "Railroad street," and not recognizing any right in the appellee to the land located within the limits of that street, failed to notify him of their action or to award any damages for its use.  The appellee thereupon exhibited this bill to enjoin the board of supervisors and the overseer appointed to work the road thus laid out, from interference with his land until there should be a formal condemnation and award of damages.  The injunction having been made perpetual on final hearing, the board of supervisors prosecute this appeal.

It is conceded by appellant that the evidence of an intention by Tegarden to make the dedication is ample, but the objection is made that there was no local authority to accept the dedication to its entire extent, and that the power of county authorities to accept a highway does not extend to one more than thirty feet wide, that being the width to which a public road is limited by law.  As to a road thirty feet wide there is no controversy, the complainant contending only for the excess over that quantity.

It seems to be well settled that to constitute a highway which the public authorities are bound to repair, there must be an acceptance of it as such by the constituted authorities, which may be proved either by a formal acceptance, or by repairing, and probably by the use of it by the public for many years with the knowledge and assent of the local authorities.

But the question here involved is not whether the county is bound to keep in repair the whole of Railroad street as a public

highway, but whether the owner of the fee can exclude the public use, or demand compensation for the land. It seems to be well settled that he cannot.

In *Beatty* v. *Kurtz*, 2 Peters 566, a lot of land on the plan of the town of Georgetown was marked by the owner "for the Lutheran church," and though there was no incorporated church to accept the dedication, it was held that a congregation of that faith having used it for the purposes intended, the owner could not resume the property.

In *Cincinnati* v. *White*, 6 Peters 432, a public square and way was marked upon the plan of the town by the owners, and lots sold with reference to it. The town was not then incorporated, but the public used the property. It was decided that the absence of a grantor, capable of accepting the grant, was immaterial, and that the dedication was so far consummated as to preclude the owner from revoking the dedication.

In *Rowan's Executors* v. *Town of Portland*, 8 B. Monroe 232, the controversy was in reference to the effect of a plat of the town by the owner of the land, sale of lots with reference thereto, and use by the public of the streets laid down on the plan, and the court said : " The mere laying out of a town upon a man's own land and by his own private act, and the making and recording of a plan of the town, may not, and as we suppose do not, of themselves conclude him to any extent. The land, notwithstanding these acts, is still his own, and neither any other individual nor the public have any right to interfere with such use of it as any man may make of his own. Though he has laid out a town upon the land and on paper, he is not bound to sell the lots or to make or authorize the making of a town in fact. If he never disposes of a lot or lots, as part of a town, no one has any interest in the town as such, or any right growing out of his acts in relation to it. But in selling to others the lots laid off as parts of the town, he creates in them an interest in the town and its plan which places both beyond his future control to their injury, unless by the consent of the vendees, or by re-acquiring the lots which he had sold to them before any other actual interest in the town had grown up.

And as we suppose that in the case of a town thus established or made by the private acts of the proprietor, he might, by a repurchase of all the lots before any actual use of the streets and other open places by the public, re-invest himself with the same rights and dominion which he had before any sale, it would seem to follow that the public at large does not acquire immediately from the proprietor, even by his act in selling and conveying the lots, any absolute or indefeasible right or interest in the existence or plan of the town, or in any of the advantages which it promises. But this right, vesting at first in the purchasers of lots, and as appurtenant thereto, and subject to be defeated by their reconveyance of the lots to the proprietor before the land is appropriated to any actual uses of a town, becomes consummated and indefeasible by such appropriation; and being thus perfect in the lot owners, results necessarily to all who by residence, business, or in any other manner may have an interest in the town or in the use of all or any of its various parts and divisions, for the purposes, which, by its plan, they are to be or may be appropriated."

The case of *Holmes* v. *Jersey City*, 1 Beasley (N. J.) 299, relied on by counsel for appellee, goes only to the extent that a private owner may not, by his own act of dedication, impose on the public authorities the duty of repairing the way dedicated, and perhaps when the width of highways is fixed by law, that there may not be an acceptance of a way of greater width as such. But it is well settled in that state that a dedication expressly made cannot be revoked even though not accepted by formal adoption.

In *Hoboken Land Co.* v. *Mayor of Hoboken*, 7 Vroom (N. J.) 540, the court said:

" It was argued that the dedication had not been consummated when the suit was brought, by reason of the absence of an acceptance or use by the public of that part of the street in controversy. That question has been set at rest in this state. Acceptance by a formal adoption by the public authorities or by public user is necessary to impose on the public the duty to amend or repair, but it is not essential to the consummation of the dedication so as to cut off the owner from the power of retraction or subject the dedi-

cated land to the public use, whenever, in the estimation of the local authorities, the wants or convenience of the public require it for that purpose."

To the same effect are *Methodist Church* v. *Hoboken*, 33 N. J. Law 1 ; *Mayor, etc.,* v. *Canal Co.,* 1 Beasley 553 ; *Irwin* v. *Dixon*, 9 How. U. S. 10 ; *Trustees* v. *Cowan*, 4 Paige 510 ; *Hannibal* v. *Draper*, 15 Missouri 639 ; 1 Wend. 255 ; 2 Ib. 472 ; 11 Ib. 486.

· *The decree is reversed, the injunction dissolved, and the bill dismissed. The cause will be remanded to the court below.*