THE VILLAGE OF AUGUSTA

*v.*

CORNELIA H. TYNER.

*Opinion filed June 19, 1902.*

1. DEDICATION—*dedication may be good at common law although insufficient for a statutory dedication.* A dedication of a street, good at common law, may be made by a survey and plat, which is insufficient as a statutory dedication.

2. SAME—*when possession of portion of street is not adverse to public.* If the owner of land plats the same and marks a street of certain width thereon, which is opened and worked by the public a part of its width, the fact that the owner leaves his old fence in part of the street, in which he disclaimed any right, until he could build a new one, does not make his possession adverse to the public.

3. SAME—*street may be opened as public necessity requires.* So far as the public is concerned, unless the offer to dedicate the street is withdrawn the street may be opened and used, at the discretion of the public authorities, as the public necessity may require, and it is not necessary to an acceptance that the street should forthwith be opened when platted.

4. SAME—*when acceptance of street by public is necessary.* Where a municipality, as trustee for the public, and individual lot owners, have common rights and interests in having a street kept open, they may unite as complainants in a bill to prevent the invasion of their rights; but where only public rights are involved an acceptance of the street must be shown, and the city cannot rely upon the rights of individual owners.

APPEAL from the Circuit Court of Hancock county; the Hon. JOHN A. GRAY, Judge, presiding.

W. H. MEAD, and DAVID E. MACK, for appellant.

APOLLOS W. O'HARRA, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit in trespass in the circuit court of Hancock county against appellant and certain of its officers and servants, to recover damages by reason of removing a fence and grading the premises for a street. To the declaration there was a plea of the general issue and a plea of *liberum tenementum* in the appellant, and that the other defendants were its officers and servants, acting under its command. Issue was joined on the first plea, and the second was traversed by a replication, on which issue was joined. The jury was waived, and it was agreed that no judgment should be rendered against the officers and servants of appellant. The cause was tried by the court and judgment was rendered against appellant, from which it appealed.

The case was tried mainly on a stipulation of facts, with some additional evidence introduced by the parties. The facts agreed upon and proved are as follows: John H. Catlin, being the owner in fee simple of certain real estate, including the premises in question, on October 16, 1866, caused to be surveyed and laid out thereon Catlin's third addition to the village of Augusta. He caused a survey and plat to be made and certified to by Edwin Mead, deputy surveyor of Hancock county. Upon the plat he certified that it was surveyed and laid out by his direction and that he relinquished all claim to the streets laid out for the use and benefit of the public, and he acknowledged the plat and had it recorded. The addition consisted of three blocks lying east and west, and north of them was a street marked "Prairie street," of the width of sixty-six feet. The premises in controversy are a part of that street as designated on the plat. Immediately

north of this street was Catlin's farm, of which the addition had been a part. He opened to the use of the public all of the street except a strip on the north side, but built his fence in the street, about twenty-two feet south of the north line at the west end and about twelve or fourteen feet at the east end. The part of the street opened to the public was worked and kept in repair by the city authorities. At the east end some lots were afterward sold north of Prairie street and not in the addition, and the fence at that end, for about one hundred and fifty feet, was moved back near the north line of the street. During the period from the filing of the plat up to March, 1873, Catlin sold to different persons all the lots described in said addition, according to their proper description and by reference to the plat. That part of the street north of the fence not open to the public was cultivated by Catlin, and the fence remained in practically the same place since 1868. The fence was very old, and in later years consisted of some wires stretched on stakes and a few old posts. There were a few forest trees, four or five in number, which sprung up along the fence. Catlin, during his lifetime, made to different persons statements that the fence was not on the line but stood out in the street; that the street was sixty-six feet wide; that when he got able he was going to put the fence on the line, and that he would let the fence stand until he built a new one. He did not claim any ownership of the strip or any right to hold it. He claimed that he was merely leaving the fence there until a new fence should be built in the future. To one person he said that he signed the plat under a misunderstanding as to the width of the street, and he would keep the fence where it was, for he thought that some time he might get a right to the land by limitation. Catlin died intestate July 25, 1900, and by a decree in partition entered April 24, 1901, part of the farm north of the addition was set off to the plaintiff, Cornelia H. Tyner. Her ownership extends to

the north line of Prairie street, and she claims that the premises in controversy never became part of the street. She was about to put up a fence on the line of the old one, and on June 2, 1901, the defendants took down the fence and opened the whole street to the public, and this is the alleged trespass.

John H. Catlin attempted to make a statutory dedication of the street by means of the plat, on which he certified that it was made by his direction, and that he relinquished all claim to the streets laid out for the use and benefit of the public, and which he duly acknowledged and caused to be recorded. Notwithstanding his intention, the plat did not have the effect of conveying the fee to the village, for the reason that the Revised Statutes of 1845, then in force, required the survey and certificate to be made by the county surveyor. The survey and certificate were made by a deputy county surveyor in his own name as deputy, and not in the name of the county surveyor, so that the plat did not have the effect to convey the fee of the street. (*Village of Auburn* v. *Goodwin*, 128 Ill. 57.) The question, therefore, is whether there was a dedication of this street good at the common law. Such a dedication may be made by a survey and plat which is insufficient as a statutory dedication. It could be made by the survey and plat alone, by which Catlin set apart the street for the use of the public. (*Maywood Co.* v. *Village of Maywood*, 118 Ill. 61; *Marsh* v. *Village of Fairbury*, 163 id. 401.)

The dedication being not according to the statute, the title in fee did not vest in the village but remained in Catlin, burdened with the offer of dedication, and as between him and the village would become complete upon acceptance. The street was opened, except the strip in controversy, and was used by the public and worked and kept in repair by the village authorities. There is no dispute that the street was accepted of the width that it was opened, but it is insisted that there was no accept-

ance of the other portion. It is true that a street may be accepted in part and the remainder rejected, if it is proved that such was the intention of the public authorities. An acceptance of some of the streets named in a plat will not constitute an acceptance of the whole, if it is shown that there was an intention to limit the acceptance. (*City of Chicago* v. *Drexel*, 141 Ill. 89; *Jordan* v. *City of Chenoa*, 166 id. 530.) Under the evidence in this case it could not be said that the village accepted only a part of the street and declined to accept the remainder. Catlin never withdrew his offer, but always said that the street was sixty-six feet wide. He claimed no right to the part enclosed by him, and said that when he built a new fence he would put it on the line. His possession of the strip was not adverse to the village. He made no claim to the strip, although at the time he seems to have had a mistaken idea that the Statute of Limitations might give him title some time. That statute does not run against a village in respect to a street, and the mere permission to him to remain in possession of a part of the street when he disclaimed any right to it or any hostility to the public could not ripen into any right under the Statute of Limitations, even if it applied to the public. So far as the public are concerned, unless the offer to dedicate is withdrawn, the street may be opened and used at the discretion of the public authorities, as public necessity may require, and it is not necessary to an acceptance that every street should be forthwith opened when platted. *Lee* v. *Town of Mound Station*, 118 Ill. 304.

Although the survey and certificate were not made by the county surveyor, yet Catlin sold all the lots in the addition with reference to the plat, and this created a common law dedication of the streets, so far as his grantees and those claiming under him were concerned. These sales conferred on the purchasers the right to have this street remain open forever; and this was not a mere right

that they should use it, but was a right vested in them that the public should have the right to use it. As to them, it was not important whether the public accepted the dedication or not, since the right acquired was a private right. (*Zearing* v. *Raber*, 74 Ill. 409; *Earll* v. *City of Chicago*, 136 id. 277; *Clark* v. *McCormick*, 174 id. 164; *Eisendrath & Co.* v. *City of Chicago*, 192 id. 320.)

Appellant insists that it could enforce this individual right without an acceptance by it, and that the judgment was wrong for that reason also. The right which the purchasers acquired to have the street kept open as a public street was their private right, and they are not parties to this suit. So far as appellant is concerned, it must have accepted the street so as to impose upon it the burden of keeping it in repair and to assume liabilities for a failure to do so. Where a municipality, as trustee for the public, and individual lot owners, have common rights and interests in having a street kept open, they may unite as complainants in a bill to prevent the invasion of their rights. (*Maywood Co.* v. *Village of Maywood, supra; Marsh* v. *Village of Fairbury, supra.*) In this case the public right only is involved, and an acceptance was necessary. We are of the opinion, however, that such an acceptance was proved. Catlin dedicated the premises to the public use, and, fully conceding the public right, was allowed to remain in possession of a portion of the street. The village entered upon the street, and the fact that he was allowed to keep his fence where it was until he should build a new one is insufficient to show that the village accepted only a part and refused to accept the remainder.

We are of the opinion that the judgment was against the evidence, and we need not take up the rulings of the court upon propositions of law submitted.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*