# SOWADZKI v. SALT LAKE COUNTY.

No. 2003.   Decided June 11, 1909 (104 Pac. 117).

1. DEDICATION—PLATTING LAND OUTSIDE MUNICIPALITY.  Act March 13, 1890 (Laws 1890, p. 76, c. 50), authorizing the owner of any land to lay out and plat it into lots, streets, alleys, and public places, and providing for dedication of the public places, applies as well to land outside, as to that within, incorporated cities and towns.  (Page 133.)

2. DEDICATION—NECESSITY OF ACCEPTANCE.  Under Act March 13, 1890 (Laws 1890, p. 77, c. 50), section 4, providing that a plat of land when made, acknowledged, filed, and recorded shall be a dedication of all the streets and public places shown thereon, the dedication is complete without a formal acceptance by the public authorities.  (Page 133.)

3. DEDICATION—ABANDONMENT—COUNTY ROADS.  Comp. Laws 1907, section 1116, which, after providing that all highways once established continue to be such till abandoned by order of county commissioners, by operation of law, or by judgment, provides that a road not used or worked for five years ceases to be a highway, while applying only to county roads, and not to municipal streets, applies to such a road as well when dedicated by a plat as when otherwise established.  (Page 141.)

4. DEDICATION—ABANDONMENT—LIMITED FEE.  Under Act March 13, 1890 (Laws 1890, p. 77, c. 50), section 4, providing that a plat of land, when recorded, shall be a dedication of the streets and public places, and sufficient to vest the "fee" of such parcels of land as are therein expressed, named, or intended for public uses for the public for the uses therein named or intended, the fee passing is only to the surface, and this only for public use for all purposes of a highway, and so is limited or determinable fee, created for a special purpose only, and hence subject to abandonment.  (Page 142.)

5. EASEMENTS—ABANDONMENT OF HIGHWAY—EFFECT ON PRIVATE RIGHTS.  Abandonment of a highway under Comp. Laws 1907, section 1116, by not working or using it for five years, while preventing the opening of it by public authorities, does not affect any rights of individuals therein acquired by purchase of lots according to the plat which dedicated it.  (Page 143.)

APPEAL from District Court, Third District; *Hon. C. W. Morse*, Judge.

Action by Paule Sowadzki against Salt Lake County.

Judgment for defendant.   Plaintiff appeals.

REVERSED, WITH DIRECTIONS.

*M. E. Wilson* and *E. A. Walton* for appellant.

*O. W. Carlson* and *Stephens, Smith & Porter* for respondent.

APPELLANT'S POINTS.

Under the law in force in the Territory of Utah, at the time of the alleged dedication, to-wit, October 30, 1891, there was no statutory authority for filing the alleged plat, because the land described in said plat and comprised within the limits of the so-called Wabash Avenue was situated outside of the limits of any city, town or village.   See volume 1, p. 287, sec. 146, Utah Compiled Laws 1888.   See Laws of 1890, pp. 76, 77, chapter 50; Laws of 1894, pp. 1-14.   A common law dedication is not alleged in the counterclaim of the defendant.   A defective statutory dedication would give to the public an easement only. (*City of Leadville v. Colorado Mining Company,* 86 Pac. 1035.) The dedication, even if made, was not accepted by the public, and more than a reasonable time having elapsed, prior to 1907, an acceptance at that time would be null and void and without legal effect. (Elliott on Roads and Streets, sec. 150; *Wilson v. Hall,* 7 Utah 90; *Hayward v. Manser,* 70 Cal. 476, 13 Pac. 141; *People v. Read,* 81 Cal. 70, 22 Pac. 474; *Niles v. Los Angeles City,* 125 Cal. 572, 58 Pac. 190.) The dedication claimed in the counterclaim of the defendant fails because of the plaintiff's defense of abandonment. (Sec. 2070, Utah Comp. Laws 1888, pp. 738, 739; *Olien v. Denver & Rio Grande Railroad Company,* 25 Colo. 177, 53 Pac. 454; *City of Leadville v. Bohm Mining Company,* 86 Pac. 1038; *Meyers v. Daubeniss,* 23 Pac. 1027, 84 Cal. 1; *Murphy v. King Coun-*

*ty*, 88 Pac. 1115 [Wash.].) Salt Lake County is estopped from claiming a highway. (*Thorp v. Clanton*, 85 Pac. 1061; Jones on Easements, sec. 241; *Schooling v. City of Harrisburg*, 71 Pac. 605, 42 Ore. 494; *Peoria v. Central Nat. Bank*, 224 Ill. 43, 79 N. E. 296, 12 L. R. A. [N. S.] 687; *Oliver v. Synhorst*, 86 Pac. 376, 7 L. R. A. [N. S.] 243; Laws of Utah 1899, p. 55, sec. 1.)

RESPONDENT'S POINTS.

Respondent cited the following authorities. As to acceptance: *Meier v. Portland C. Ry. Co.*, 19 Pac. 610 (Ore.); *City of Osage v. Larkins*, 19 Pac. 659 (Kans.); *Augusta v. Tyner*, 197 Ill. 242, 64 N. E. 378; *Briel v. Natchez*, 48 Miss. 423; 13 Cyc., pp. 455, 457, 458; *Baldwin v. City of Buffalo*, 35 N. Y. 384; *Shea v. City of Ottumwa*, 24 N. W. 582 (Iowa); *Town of San Leandro v. Le Breton*, 13 Pac. 407 (Cal.); *Fulton v. Town of Dover*, 6 Atl. 633 (Del.): *Coffin et al. v. City of Portland*, 27 Fed. 412 (Ore.); *Grogan v. Town of Hayward*, 4 Fed. 164, 165 (Cal.); So. Rep., vol. 5, pp. 622, 623 (Miss.); *Land Co. v. Mayor, etc.*, 36 N. J. Law 540; *Dummer v. Jersey City*, 20 N. J. Law 86; *Mayor, etc., v. Canal Co.*, 12 N. J. Eq. 533; *Irwin v. Dixion*, 9 How. 10; *Trustees v. Cowen*, 4 Paige 510; *Hannibal v. Draper*, 15 Mo. 639; *In re Seventeenth St.*, 1 Wend. 266; *In re Lewis St.*, 2 Went. 472; *Wyman v. Mayor, etc.*, 11 Wend. 486; *Maywood Co. v. Village of Maywood*, 6 N. E. Rep. 870; *Zearing v. Raber*, 74 Ill. 409; Elliott on Roads and Streets, pp. 86, 87, 89; *Hoboken Land Co. v. Hoboken*, 36 N. J. L. 540; *Shea v. The City of Ottumwa*, 67 Iowa 39. As to estoppel: *Sims v. Frankfort*, 79 Ind. 446; *Ralston v. Weston*, 46 W. Va. 544, 33 S. E. 326; *Webb v. Demopolis*, 95 Ala. 116, 21 L. R. A. 62; Elliott on Roads and Streets, p. 884.

FRICK, J.

Appellant brought this action to restrain the respondent, its officers and agents, from interfering with her property. In July, 1890, one Dankowski was the owner of a five-acre tract of land lying south of the city of Salt Lake in Salt Lake county. After surveying and dividing said tract into lots, said Dankowski made a plat thereof, and, after having the same certified to by the county surveyor and approved by the probate judge, duly acknowledged and filed the same for record in the office of the county recorder of Salt Lake County. The land aforesaid was surveyed, platted, and a plat thereof filed, under the provisions of a certain act approved March 13, 1890. The act (Laws 1890, p. 76, c. 50), in substance, provides: Section 1: That any owner of any land may "lay out and plat such land into lots, streets, alleys and public places." By section two it is provided that an accurate map or plat of the lots shall be made showing the boundaries of all parcels of land so platted, and stating what portions thereof are intended for avenues, streets, lanes, alleys, commons, or other uses. Section 3 requires such plat to be acknowledged by the owner of the land and certified to by the surveyor making the plat, and that it be filed and recorded in the office of the county recorder of the county wherein the land is situate. Section four is as follows: "Such maps and plats when made, acknowledged, filed and recorded with the county recorder shall be a dedication of all such avenues, streets, lanes, alleys, commons or other public places or blocks, and sufficient to vest the fee of such parcels of land as are therein expressed, named or intended for public uses for the inhabitants of such town and for the public for the uses therein named, or intended." The last section of the act provides a penalty for selling any lots within any town or addition before the provisions heretofore stated have been complied with. In another act it is provided that, before filing, the plat must be approved by the authorities of the city or town in which the land is located, and, in the absence of any such authorities, by the probate judge of the county wherein the land is situate. The strip of land platted as aforesaid

was 762 feet in length by 287 feet in width. Through the center lengthwise of this strip a street was platted fifty feet wide called "Wabash Avenue," and a tier of lots 25 feet by 118 feet was platted on either side of this avenue. The strip of land as platted lay between State and Second East streets, the west end abutting on State and the east end on Second East street. In this way Wabash Avenue opened on both of those streets. On the plat the following dedication appears by Dankowski, entitled "Owner's Dedication:" "Know all men by these presents; that I, Fred V. Dankowski, single, owner of the above described tract of land, having caused the same to be subdivided into lots and streets, and to be here-after known as Dankowski Park, do hereby dedicate to the perpetual use of the public all parcels of land so described in surveyor's certificate and shown on above diagram as streets." This was duly acknowledged, and the certificate of the surveyor in due form is also indorsed on the plat.

The undisputed evidence is to the effect that the land at the time it was platted into lots was, and at the time of the trial continued to be, outside the limits of Salt Lake City and outside of any incorporated town, and was situate in Salt Lake County; that both State and Second East streets at the point in question are continuations of those streets after they pass beyond the limits of Salt Lake City; that at the time the land was platted, and ever since 1870 or 1871, a partly brick and partly adobe house was standing on the west end of the strip near State Street, nearly all of which house stands in the avenue designated as Wabash Avenue on the plat; that a fence was erected more than 30 years prior to the trial along the east margin of State Street in front of the house; that this fence was kept up, with the usual breaks and re-pairs occurring in fences of this character, during all of the time; that there were no openings therein, except gates in front of the house, one for a driveway to the premises and another for persons to pass through; that the entire strip of ground as platted has continued in practically the same con-dition it was when it was platted, namely, a cultivated field on which crops of some kind were produced about each year;

that nothing had been done on the platted ground in the way of improvements, and the way named Wabash Avenue was farmed in connection with the other portions of the ground and in the same manner, so that there were no indications on the ground itself of any street, road, or highway; that appellant had lived in the house standing partly on Wabash Avenue for a period of fifteen years before this action was commenced, and that others had lived in it prior to that time; that in 1901 she became the owner of five lots on one side of Wabash Avenue adjoining State Street, and thereafter, in 1904, of the other five lots lying opposite to the first five and on the other side of the avenue; that, after she became the owner of the property, she made some improvements about the house, planted shrubbery, and improved the lawn in front of and around the house, some of the shrubbery and lawn being on Wabash Avenue. Under substantially these facts and conditions, the county road supervisor on the 15th day of June, 1907, served a notice on appellant, which required her within ten days to remove all of her improvements from Wabash Avenue, and, upon her refusal to comply therewith, the road supervisor went upon the premises included within the avenue, and attempted to destroy and remove appellant's improvements, or some of them, and break down the fence in front of her house which barred the entrance to Wabash Avenue, with a view of opening said avenue as a county highway. Appellant immediately brought this action to restrain the respondent from interfering with her property. A temporary restraining order was duly issued pending a heaing on the merits. At the hearing the facts substantially as outlined above were developed, upon which the court made findings of fact and conclusions of law in favor of respondent, and entered a decree or judgment declaring Wabash Avenue a public highway, and requiring appellant to remove her house and all her improvements therefrom upon the ground that she thereby was encroaching upon a public highway. The appeal is from the judgment and decree aforesaid.

It is contended by counsel for appellant that the judgment is erroneous for the following reasons: (1) That there never

was a statutory dedication of Wabash Avenue; (2) that, if there was a dedication of the avenue, there was no acceptance of it by the public, and hence the alleged dedication fails; (3) that, if there ever was a highway dedicated, it has ceased to exist by reason of abandonment; and (4) that the county is estopped as against appellant to claim the *locus in quo* as a public highway. Upon the other hand, respondent insists that the dedication was complete upon the filing of the plat, and that no formal acceptance was necessary to constitute Wabash Avenue a public highway; that there was no abandonment for the reason that section 1116, Comp. Laws 1907, relative to the abandonment of highways, has no application to dedicated streets; and, further, that, under the facts, there is no estoppel shown as against the county. While a plausible argument is possible in support of the contention that the act of 1890, *supra,* under which the plat was filed and dedication made, referred to lands lying within the limits of an incorporated city or town only, yet we are of the opinion that the language of the act is broad enough to cover, and was intended to cover, lands lying outside of such corporations. Without specially setting forth our reasons in this regard, we shall assume for the purposes of this decision that the act of 1890, *supra,* conferred authority upon owners of lands to plat them although lying outside of the corporate limits of a city or town, and that the plat in question substantially conformed to the provisions of the act in question, and that the plat was properly executed and filed, and that the filing thereof was sufficient to constitute Wabash Avenue a public highway by dedication. We are also of the opinion that, in view of the language contained in section 4 of the act referred to, the dedication was complete without a formal acceptance by the public authorities, and that such is the law as declared by the great weight of authority. In 13 Cyc. 455, the law upon this subject is stated in the following language:

"Where the owner of real property lays out a town upon it, and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city in which his land is so laid off, he thereby dedicates the streets and alleys to the use of the public, unless it appears either by express statement in the conveyance or otherwise that the mention of the street was solely for purposes of description, and not as a dedication thereof. . . . Nevertheless the mere laying out of a town and making a plat of it without selling any of the lots will not, in the absence of a statute, constitute a dedication of the streets; and it has also been held essential that the sales be shown to have been rendered effectual by conveyances. According to the great weight of authority, a dedication made as hereinbefore described is irrevocable, and the dedicator is forever concluded from exercising any authority or setting up any title to the same, and that, too although there has been no formal acceptance by the public authorities. Nor is the irrevocable character of the dedication affected by the fact that the property is not at once subject to the uses designed."

This text is sustained by the following among a great number of cases, which might be cited: *Village of Augusta v. Tyner,* 197 Ill. 242, 64 N. E. 378; *Briel v. Natchez,* 48 Miss. 423; *City of Osage v. Larkin,* 40 Kan. 206, 19 Pac. 658, 2 L. R. A. 56, 10 Am. St. Rep. 186; *Baldwin v. City of Buffalo,* 35 N. Y. 375; *Town of San Leandro v. Le Breton,* 72 Cal. 170, 13 Pac. 405; *Shea v. City of Ottumwa,* 67 Iowa 39, 24 N. W. 582; *Fulton v. Town of Dover,* 6 Del. Ch. 1, 6 Atl. 633; *Harrison County v. Seal,* 66 Miss. 129, 5 South. 622, 3 L. R. A. 659, 14 Am. St. Rep. 545; *Land Co. v. Mayor, etc.,* 36 N. J. Law 540; *Paine Lumber Co. v. City of Oshkosh,* 89 Wis. 449, 61 N. W. 1108; Elliott on Roads and Streets (2d Ed.), sections 117, 118. In all of the foregoing cases it is held that, in case the statute has substantially been complied with, dedication is complete, and no formal acceptance by the public is necessary, and that the streets so dedicated may be opened at any time after such dedication when necessary for public use, and that a failure to open them until such time will not be deemed an abandonment thereof. In some of the cases the distinction with respect to the rights of the purchaser of lots abutting upon the highway and the

duty and liability of the public with regard to such a highway is clearly pointed out. No doubt a street or highway may exist, but may not be opened for travel, and, until it is so opened, the traveler may not hold the municipality responsible in case he sustains an injury or damage is using such a street or highway. This distinction is so well and tersely stated by Judge Elliott in his excellent work on Roads and Streets in the footnote to section 114 that we shall adopt his language as part of this opinion, as follows:

"While it is true that, in order to bind the public, it is essential that there should be some authoritative acceptance, it is not true that any acceptance is required where private rights are acquired upon the faith that public ways have been dedicated which may be opened at once, or at some future time, should the public representatives so elect. It is clear that it would be unjust to charge the public with maintaining a street or road which it has not accepted, but, as a private individual assumes no such burden, no acceptance is necessary to fix his rights."

This distinction is also referred to in similar language in some of the cases cited, *supra*, and especially in the following, namely: *Briel v. Natchez, supra; Niles v. Los Angeles,* 125 Cal. 577, 58 Pac. 190; *Harrison County v. Seal, supra; Village of Augusta v. Tyner, supra.* In the last case referred to the Supreme Court of Illinois clearly points out that, while the rights of the public and those of the abutting owner may be such that they may join hands in opening or maintaining the street as a highway for passage, nevertheless the rights of the abutting owner and those of the public are distinct, and, while the abutting owner may be in a position to compel a maintenance of the easement, the public, under certain circumstances, may not. In view of the great weight of authority, we think the following propositions may be said to be established: (1) That the legislature may prescribe the conditions under which lands may be platted and provide for the dedication of streets, alleys, and public places, and, when the statute declares that upon the filing of the plat the streets therein dedicated shall be deemed dedicated as streets or highways, that the mere filing of such a plat, if the stat-

ute is substantially complied with, constitutes such streets
public highways; (2) that, when so dedicated, the streets,
alleys, and public places retain their public character until
vacated in the manner prescribed by law, or until abandoned
as hereafter stated; and (3) that while the right of the public
authorities to open a highway may, under certain circum-
stances, cease, the right of the individual lotowner to main-
tain the easement continues and exists notwithstanding the
right of the public authorities to open the highway is lost.

Assuming, therefore, that Wabash Avenue was dedicated
as a public highway, and that the dedication for the purpose
of constituting it a public highway was complete without any
formal acceptance by the authorities of Salt Lake County,
the third proposition insisted upon by appellant, namely,
whether or not Wabash Avenue under the circumstances dis-
closed by this record had ceased to be a public highway when
the road supervisor attempted to open it in June, 1907, re-
mains to be determined. This is the serious question in the
case; and it seems to us that its determination in a large
measure depends upon the interpretation to be given to our
own statutes which relate to the subject of streets and high-
ways. Section 1114, Comp. Laws 1907, provides that roads
as well as streets may become such by dedication. No doubt
the dedication referred to in this section refers to dedications
by statute or by deed, since the following section specifically
refers to any other kind of a dedication, or to abandonment
of land to the public for public use. Section 1116 reads as
follows: "All highways once established must continue to
be highways until abandoned by order of the board of coun-
ty commissioners of the county in which they are situated,
by operation of law, or by judgment of a court of competent
jurisdiction; provided, that a road not used or worked for a
period of five years ceases to be a highway." This section
in its present form became operative on the 1st day of Jan-
uary, 1898, when the Revised Statutes of 1898 went into
effect. Up to that time the law in force read as follows: "A
road not worked or used for a period of five years ceases to be
a highway." (Section 2070, 1 Comp. Laws Utah 1888.)

It is contended by respondent that section 1116, *supra,* has no application to highways created by statutory dedication, and a large number of cases are cited to the effect that a street or highway so dedicated may be opened for travel and use at any time when the public necessities require it to be done, and that in the meantime the highways or streets are not abandoned. The decided cases to which we have been referred and others which we have examined, with one or two exceptions, however, related to plats which covered territory lying within the corporate limits of cities, towns, or villages, or where such territory became a part of such corporations before the particular action was commenced. Nor is there a single case, except those we shall notice hereafter, in which a statute similar to ours, with respect to abandonment, was passed on or considered. We fully agree with counsel for respondent that the sections we have referred to were not intended to and do not apply to streets in incorporated cities and towns in this state, but we cannot agree with them that those sections do not apply to dedicated roads and highways as well as to roads that were established by any other method known to the law. The reasons why these sections do not apply to city or town streets are to our minds reasonably clear. It will be observed that section 1116 refers to all highways over which the board of county commissioners has jurisdiction. While it does not so state in terms, it nevertheless directly refers to the commissioners of the county in which the highways are situated, and says nothing about highways or streets which are exclusively under the control of city or town authorities. In this state we have no village organization, but are limited to cities and towns, which are divided into classes. By subdivision 8 of section 206, and again in section 255, Comp. Laws 1907, authority and discretion to establish, vacate, and control city and town streets, alleys, and public places are expressly vested in the city and town councils, while in subdivisions 24 and 27 of section 511 such power, control, and discretion are vested in the county commissioners over all highways, "within the county outside of incorporated cities."

But there is a matter of greater significance still to be found in the act establishing a uniform system of county government passed immediately after the Constitution of this state became effective, and after the Territory of Utah had been merged into a state. (Laws Utah 1896, p. 516, c. 131.) In that act the provisions which are now incorporated into section 511, *supra,* with its subdivisions, were, in substance, adopted. It was in that act that the power and discretion of establishing and vacating as well as all control over highways was conferred on the county commissioners, and it was there said in subdivision 39 of section 21, which is entitled "General Permanent Powers of Board," that "nothing in this act is intended to diminish, impair, or in anywise affect the powers heretofore conferred upon incorporated cities or towns." (Laws Utah 1896, p. 530, c. 131.) These provisions have been retained in our statutes, and have been incorporated in the Revised Statutes of Utah of 1898, and again in the Compiled Laws of 1907, but in the rearrangement of these provisions in the several compilations many matters have been placed under different heads or subheads. Such a separation in no way affects our duty to consider and construe the several provisions together and as *in pari materia.* Again, in section 1121, Comp. Laws 1907, it is expressly provided that, "when public highways extend through any incorporated town or city, they shall conform to the direction and grade and be subject to all regulations of other streets in such city or town." Section 1144x provides for a system of state highways. The streets in cities of the first and second class are especially excluded from becoming a part of such system. In section 2866x, Comp. Laws 1907, it is provided that rights in streets in cities and towns cannot be acquired by adverse possession, regardless of the time such possession may have continued. As pointed out in the recent case of *Pioneer Inv't & T. Co. v. Board of Education,* 35 Utah 1, 99 Pac. 150, this is an exception to the general rule prevailing in this state in view that the statutes of limitations are made applicable generally as against the state itself. In this connection it is of some importance to bear in mind that all of the statutes

above referred to, with the exception of section 2866x, and the act of 1896, were in force at the time the plat in question was filed and Wabash Avenue dedicated to public use. True, the form of phraseology of some of the sections has been changed, but their substance and effect are the same. We have referred to these things for the purpose only of showing that the legislature has always treated streets as being controlled by different provisions than those which affect county highways. In view of these provisions, and others which require no special mention, we are of the opinion that the legislature intended that streets in cities and towns should be governed by a different rule with regard to the abandonment thereof than are roads and highways in the county outside of such cities and towns. The reason for such distinction is clearly pointed out by some of the authorities heretofore cited as well as in those hereafter noticed. But, independently of such reasons, if the legislature has made such a difference (and we think it has), then it becomes our duty to enforce it. The distinction we here invoke was enforced in a very recent case decided by the Supreme Court of Washington in the case of *Murphy v. King County,* 45 Wash. 87, 88 Pac. 1115. The land platted in that case was outside of the limits of an incorporated city, and the street in question there was dedicated in precisely the same manner as was Wabash Avenue, and, like it, remained unopened and unused. In that case, as in this, an injunction against the county was sought to prevent it from opening the street. If there is any difference in the facts, there can be no distinction in the principle involved between that case and the one in hand. The Washington Supreme Court, independently of the statutes in force in this state with respect to the difference between city streets and county roads or highways, arrived at the conclusion that there of necessity is such a difference, and held that a statute similar to our section 1116 applied to a street which was dedicated by the owner of the land by platting it into lots. In that case, as in this case, all that was done with the particular street was to leave it in the condition in which it was when platted in September, 1891. In 1900 the plaintiff in

that case became the owner of the lots abutting on the street and the action was commenced some time in 1905, or early in 1906. From the statement of the case it appears, however, that the county commissioners of King County had vacated some of the streets dedicated on the plat, but refused to vacate the street in question, thus furnishing some evidence of an intention to retain the street in question. But, notwithstanding this, the court held that the statute applied to such a street because it was outside of a city or town, and that it had ceased to be a highway, and the county had lost authority to open it.

In the case of *Myers v. Daubenbiss,* 84 Cal. 1, 23 Pac. 1027, the Supreme Court of California held that a county road not opened for 14 years after it was established ceased to be a highway, and could not be opened. Counsel for respondent, however, urge that the California case is not an authority, for the reason that the highway there in question was one that was established by a decree of court, which court had no power to establish highways. It is true that the statute (section 1114) which confers authority upon the courts of this state to establish highways in partition suits was not then in force in the state of California. The Supreme Court of California so stated, but, notwithstanding this, the court declined to pass upon the jurisdictional question, and held that under section 2619 of the Political Code of California the road had ceased to be a highway by operation of law. Section 2619 aforesaid is a verbatim copy of our section 1116, *supra,* with the exception of the provision, namely: "That a road not worked or used for a period of five years ceases to be a highway." While in the California case the question of whether a highway had ever been legally established or not was involved, still the broader question as to whether a highway existed or not was likewise involved, and the court could decide the matter on either ground. It chose the latter, and hence what was said by the court is in no sense obiter, but is a decision of the ultimate question involved. Counsel for respondent also cite and rely upon the case of *Paine Lumber Co. v. City of Oshkosh,* 89 Wis. 449, 61 N.

W. 1108. This was a case where land had been platted and streets dedicated within the limits of an incorporated town or city, and as in the case of *Shea v. Ottumwa, supra,* no attempt had been made to use or open the street for many years after the land was platted and the street had been dedicated. A statute similar to our section 1116 was in force in Wisconsin, and it was contended by the plaintiff in that case that the street had been abandoned by the city and had ceased to exist as a public highway. The court, however, held (1) that the statute providing for abandonment did not apply to streets within cities and towns; and (2) that it only applied to highways that were laid out or established by methods other than by dedication. This case is reviewed by the Supreme Court of Washington in *Murphy v. King County, supra,* and the ruling of the Wisconsin court on the second ground or proposition is disapproved. Like the Supreme Court of Washington, we can see no good reason for such a distinction. A street or highway is such whether dedicated or otherwise established. Its character as a public easement is precisely the same in one case as in the other. Moreover, as we have already stated, our statute (section 1114), especially authorizes roads or highways to be established by dedication. When thus dedicated, a highway is established just as much as if created in some other way. If, therefore, the highway is one lying outside of a city or town, it is one which comes within the powers and jurisdiction of the county commissioners, and hence falls within the provisions **3** of section 1116, which provides that "all" (not only some) highways once established cease to be such if not used or worked for a period of five years. While, as we have attempted to show, there are good statutory as well as other reasons why streets in cities and towns should not be deemed abandoned for mere nonuser, there is absolutely no reason why the abandonment provided for in section 1116 should not apply to all county highways regardless of whether they are created by one rather than by another method. For these reasons, we decline to follow the Wisconsin case upon the second point above stated.

Counsel for respondent, however, seem to lay some stress upon the claim that by virtue of the act of 1890 under which Wabash Avenue was dedicated the fee to or in the avenue passed to the public. From this counsel no doubt draw the inference that the title to land to which the fee has passed cannot be lost by mere nonuser or abandonment, but, if lost at all, it must be by operation of law or by adverse possession. That the general rule is to this effect is conceded, but we cannot construe section 4 of the act of 1890 as counsel construe it. While the word "fee" is used in the section, it is clear from what follows that it was not intended that the fee of the corpus or land itself should pass, but only the fee to the surface, and this only for public use for all purposes of a street or highway. The fee mentioned in the statute was thus what is known as a limited or determinable fee, and was created for a special purpose or purposes only, and hence was subject of abandonment. This was also the construction that the owner of the land placed upon this statute in making the dedication of Wabash Avenue as a street. In the dedication he says: "Do hereby dedicate to the perpetual use of the public," etc. This is not an absolute grant, but one only for a special purpose, namely, for use as a public street. The doctrine that such conditional dedications or grants do not pass the fee to the land itself is well illustrated by the courts of many states. Many cases might be cited, but we shall only refer to the following well-considered cases: *Kimball v. Kenosha,* 4 Wis. 321; *Olin v. D. & R. G. Ry.,* 25 Colo. 177, 53 Pac. 454; Elliott, Roads and Streets (2d Ed.), secs. 885, 886, where the question is discussed and cases in part collated. It is quite true that the original owner may not, after selling lots abutting on a dedicated street or highway, reclaim that portion of the land included within the highway in case it is vacated or abandoned. In parting with his title to the lots the fee passes to the purchaser to the center of the highway, and, if the highway is vacated or abandoned the land belongs to the abutting lot or landowner, and not to the original owner, unless an express reservation to that effect was

made in the dedication or conveyance. This is also the effect of section 1120, Comp. Laws 1907, which expressly provides that by taking or accepting land for a highway the public obtains only the right of way, and that the fee to the center of the highway passes to the purchaser of the adjoining land. The question, therefore, in case a public highway has been vacated or abandoned, and where there is no express reservation of the fee to the land in the highway, is not whether the abutting owner can establish title to the land included within the highway by adverse possession, but it is whether he owns the fee to the center of the vacated or abandoned highway. See cases last above cited.

In view of our statute upon the subject of streets and highways, and of the authorities which we have cited, we are clearly of the opinion that Wabash Avenue was dedicated as a public highway; that upon the filing for record of the plat by Mr. Dankowski the dedication was complete and Wabash Avenue thenceforth was a highway dedicated to public use; that under our statutes there is a distinction with respect to the use and abandonment of streets in cities and towns and of highways or roads outside of such cities and towns; that section 1116 applies to all roads and highways outside of cities and towns irrespective of how they were established or created; and that any public road or highway of a county of this state if not used or worked for a period of five years whether from the time it was established or created or from the time it is no longer used ceases to be a public highway, and the county authorities, after such time has elapsed, cannot open it, except in the manner provided by law for the establishment and opening of highways generally. From this it necessarily follows that the county supervisor had no legal right or authority to interfere with appellant's house or property situated within the limits of Wabash Avenue, and the respondent should therefore be enjoined from such interference. In arriving at this conclusion, we have not considered the rights that abutting owners may have in keeping Wabash Avenue open for ingress and egress to and from their premises. Whether

there are such owners the record does not disclose, except that, upon cross-examination of a witness, it is shown that he had some interest in some of the lots. Whether he obtained such interest before or after Wabash Avenue was abandoned does not appear. It might well be that abutting owners may have interests independently of the county in a road or highway, which interests the court would protect, although the right of the county to open the highway for general use had been abandoned. There are no such parties or interests involved in this case so far as this record discloses, and there are no claimants here asking an adjudication of their rights, and hence we refrain from expressing an opinion upon the question of private rights or interests.

From what we have said, it also follows that the question of estoppel raised by the apellant needs no further consideration.

The judgment is therefore reversed, with directions to the district court to vacate its findings of fact and conclusions of law and to substitute others in conformity with the views herein expressed, and to enter judgment perpetually restraining and enjoining respondent, its officers and agents, from opening Wabash Avenue to the extent of appellant's lots abutting on the same, and from in any wise interfering with appellant's property, or the full possession or enjoyment of that part within the limits of Wabash Avenue. Appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.