The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF FREMONT, State of Wyoming, Matt McGuire, H. L. Leaming, and Thomas Coleman, Appellants (Defendants below),

v.

STATE of Wyoming ex rel. Vern H. MILLER, Jim Gallinger, William B. Mullins, Robert R. Cantleberry, Mervin J. Hedges, Maurice A. Doane, Harvey Betts, Everett Ward, Hugh L. Otte, Roy Groves, Hugh Cooley, J. C. Arnold, and all others similarly situated, Appellees (Plaintiffs below).

No. 3011.

Supreme Court of Wyoming.

March 7, 1962.

**538**

G. L. Spence, Riverton, for appellants.

Elmer C. Winters, Lander, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Twelve electors of Fremont County, in the name of the State, for themselves and

others similarly situated, sought a writ of mandamus directing the board of county commissioners "to save and protect Fremont County * * * [Road] No. 212 * * * for the use and benefit of said County, the electors and citizens thereof; and to remove all fences, gates, and manmade obstructions" from the said road and make it available for travel.[1]

Plaintiffs alleged that the board on March 21, 1921, had established county road 212; that the said road connected with and provided access to public lands which were the property of the State of Wyoming and the United States of America, including national forest lands; that the board failed and refused to perform its statutory duty under §§ 18-149 and 24-5, W.S.1957; that the board permitted construction of fences across the road by which access was denied to petitioners and to the public; and that plaintiffs had no adequate remedy at law.

The court forthwith ordered issuance of an alternative writ of mandamus commanding the board to remove all fences and gates from the right of way of 212.

In their answer, defendants alleged that plaintiffs had an adequate remedy at law, admitted that certain proceedings with reference to the establishment of county road 212 had been taken but that said road as so established had never been built or maintained. In affirmative defenses, they urged that there had been no proper demand to remove obstructions, that Boeseke, Sullivan, and Meyers, over whose land the road ran, were indispensable parties, and, somewhat ambiguously, alleged that if road 212 had ever been established it had been vacated and abandoned.

The court ordered the three named persons to be joined as defendants, whereupon Sullivan and Boeseke each filed an answer, admitted ownership of certain lands through which the road purported to run and alleged that neither the board nor

plaintiffs had any right, title, or interest to the property and that he had prohibited the use of his land by plaintiffs until a proper road was laid and fenced. Each insisted he was not a proper or indispensable party and prayed the dismissal of plaintiffs' petition and asked that his title to the land be quieted against both the defendants and the plaintiffs. No service was had upon Meyers, who was reported not found in Fremont County.

Following trial of the matter, the court found generally in favor of the petitioners, ordered that a peremptory writ of mandamus issue directing the board to forthwith give the owners and agents of the land over which county road 212 was located notice in writing to remove fences from the right of way, and further decreed that "if all of said fences across the right of way * * * are not so removed by said landowners within * * * thirty (30) days * * * the Board * * * shall remove said fences and said road shall be opened and worked."

The board has appealed, urging that (1) the court erred in requiring the performance of an act where the legal duty to perform was not clear and complete, (2) the court had no jurisdiction to direct the board how to exercise its judgment, (3) the court had no jurisdiction to issue a writ of mandamus, the effect of which was to try title to property, and (4) there was a failure of plaintiffs to prove either demand of the board to perform a specific act which was its clear and undisputed duty or a refusal of the board to so perform.

## FACTS

There is no dispute between the litigants as to facts developed at the hearing. The records of the board disclose that on July 25, 1920, there was a petition asking for the establishment of a public road running between two others already established, namely, North Fork and Baldwin Creek. The road was not immediately denominated, but

---

1. County road 139 was included in the petition but little evidence related thereto, the court's order did not mention it, and it is not within the issues of the appeal.

in the field notes of the county surveyor was listed as the extension of the Baldwin Creek Road, No. 212. The board purported to comply with the statutes on the subject, and its records regarding the proceedings were placed in evidence at the trial, but it is unnecessary to consider them since the answer admitted the establishment of the road. The testimony disclosed that in the period following 1920 and for at least twenty years prior to the trial there had been a road of sorts in the general vicinity of 212, that it had been worked by the board on occasion, and that various ranches in the area served by the road had come into single ownership during the years so that the main travel in recent times was to and from Shoshoni Lake and certain areas of government land where hunting and fishing occurred. In 1958 the board took steps, including the publication of notice, to vacate the road, received numerous objections, held meetings with ranchers and other interested parties, and finally wrote a letter disclaiming responsibility for settling disputes and indicating that the parties should resort to the courts.

Bishop, the present county surveyor, was called as a witness for defendants and testified that at the direction of the board he had made some investigation of the area, had supervised one survey beginning at the north end of 212, had conducted the actual instrument work and made notes in another survey which began at the southern end of the road in question; that the road as traveled in many places did not coincide with 212 as established according to the records but varied in some places as much as 350 feet, that the county records were so ambiguous and uncertain that it would be difficult if not impossible to lay out a road therefrom, and that, as near as he could ascertain, 212 as shown by the records was over ground which in some places was so rough that a road could not be reasonably built. His conclusion that the road could not be laid out from the previous records is unconvincing since he began his survey some distance from the Baldwin Creek Road, purportedly following the calls on record in the clerk's office but ignoring entirely the original survey therein. Additionally, a map of his survey designated Exhibit A and referred to in his testimony, but not admitted, showed his first call as 1740 feet, whereas that on the original survey showed 1780 feet.

Plaintiffs made no denial of the variance between the road which was traveled and that which was listed in the county records but relied upon the fact that the board had by its notice of vacation recognized the existence of the road and was now in effect complaining of the inability of its own employee in locating a right of way which the court had found to exist.

At the inception we note' that the defendant board in its answer admitted, at least tacitly, the establishment of road 212 and in the brief stated, "We do not deem it necessary to comment upon the sufficiency of the evidence introduced for the establishment of Road No. 212, since this case need not turn upon the technicalities of establishing a county road, but upon principles more broad and fundamental * * *." Notwithstanding the position thus taken the defendant board here urges "The first question that comes to the Commissioners' minds, is * * * simple and crucial * * *: Where is Road 212?" thereby implying that the establishment was invalid for uncertainty. No consideration will be given to this contention since defendants are bound by their pleadings. State ex rel. Tibbals v. District Court of Ninth Judicial Dist. in and for Fremont County, 42 Wyo. 417, 295 P. 916; Nugent v. Powell, 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199, 62 Am.St.Rep. 17; and see 1 Bancroft, Code Pleading, § 429. Moreover, even where a defense contains both an admission and a denial respecting the same fact the admission will prevail, Strom v. Felton, 76 Wyo. 370, 302 P.2d 917.

The defendants argue that before a writ of mandamus will lie a relator must show a clear legal right to which he is entitled, which is withheld or threatened to be with-

held from him, and that there is a corresponding duty on the part of the respondent to perform, which duty can only be enforced by means of the right, and cite State ex rel. R. R. Crow & Co. v. Copenhaver, 64 Wyo. 1, 184 P.2d 594, and State ex rel. Sullivan v. Schnitger, 16 Wyo. 479, 95 P. 698. They urge that mandamus will not generally be granted to coerce discretionary action upon the part of a public official or board or to require a legal right which is not clear or complete, citing State ex rel. Van Patten v. Ellis, 37 Wyo. 124, 259 P. 812, 263 P. 105. They say that although plaintiffs' petition alleged that the board's clear duty was set out in § 18–149, W.S.1957, and § 24–5, W.S.1957, the former merely enumerates the powers of the board, including its right to lay out, alter, or discontinue any road running through the county, and the latter simply states that all county roads shall be under the management and supervision of the board and that no county road shall be established, altered, or vacated except by its authority.

Plaintiffs, without contesting the rule that mandamus will issue only to enforce the performance of a clear duty, now rely upon the existence of a statute not mentioned in their pleading, namely, § 24–66, W.S.1957, which reads:

"Whenever a public road is ordered to be established or altered, according to the provisions of this act, which shall pass through, or on enclosed lands, the road overseer, or other proper officer, shall give the owner, agent or occupant of such lands, notice in writing to remove the fences thereon, and if such owner, agent or occupant shall not move his fence, within thirty days thereafter, the same may be removed by the proper officer, and the road opened and worked; and such owner shall forfeit and pay twenty dollars for each day he shall permit his fence to remain after said thirty days, and shall pay all necessary cost of removal, to be collected by the prop-

er officer, in any court of competent jurisdiction, for the use and benefit of the general county road fund."

Plaintiffs contend that the board's obligation under this section was clear and definite, especially in the light of its previous recognition of the existence of the road, and cite a case from the neighboring jurisdiction of Nebraska, State ex rel. Draper v. Freese, 147 Neb. 147, 22 N.W.2d 556. In that case certain persons sought mandamus against county commissioners, requiring them to reopen and repair a certain public highway. The evidence disclosed that some seventy years previously steps had been taken to establish the road, that no work had been done on it at public expense, although it had not been vacated, and that from the beginning there had been some travel on a trail which in some places varied from the location of the road as laid out. The petition was dismissed by the trial court and on appeal the supreme court reversed and directed that the proper parties proceed to open and work the road to make it usable by the public. Although other aspects were of importance in the decision, the court significantly stated that mandamus was generally recognized as the proper remedy to compel public officers to perform their duty to take care of and keep in repair public highways whenever the refusal to act was a determination not to discharge a plain duty.

Our research indicates that the doctrine enunciated in the Freese case has not been altered in Nebraska, and the case of Burkhardt v. Cihlar, 149 Neb. 712, 32 N.W.2d 197, cited by plaintiffs, is authority for the fact that an injunction will not there lie to prevent property owners from maintaining fences across a road since mandamus is a proper remedy.

In passing, it may be noted that statutes in existence at the time of the Freese decision included § 39–103, R.S.Neb.1943:

"The county board has a general supervision over the public roads of the

county, with power to establish and maintain them as herein provided, and to see that the laws in relation to them are carried into effect."

similar in many respects to our § 24–5, and § 39–116, R.S.Neb.1943:

"After the road has been finally established, the plat of the road must be recorded and platted by the county surveyor in the road plat book of the county with a proper reference to the files in the county clerk's office where the papers relating to the same may be found. The county clerk must record the petition, damage claims, field notes, and all other papers relating to the road. The clerk must direct the road overseers to have the same opened and worked; but when crops have been planted or sowed before the road is finally established, the opening thereof shall be delayed until the crop is harvested."

■ Although the provision in this statute regarding the opening and working of the road is perhaps more obligatory in nature than the corresponding provision in § 24–66, W.S.1957, the distinction is not of importance under these circumstances in view of the rule stated in People ex rel. Brokaw v. Commissioners of Highways, 130 Ill. 482, 22 N.E. 596, 598, 6 L.R.A. 161, and approved by this court in Burnham Hotel Co. v. City of Cheyenne, 30 Wyo. 458, 222 P. 1:

" * * * The word 'may' in a statute will be construed to mean 'shall' whenever the rights of the public or of third persons depend upon the exercise of the power of the performance of the duty to which it refers, and such is its meaning in all cases where the public interests and rights are concerned, or a public duty is imposed upon public officers, and the public or third persons have a claim *de jure* that the power shall be exercised. * * * "

■ Since the Nebraska and Wyoming statutes are substantially similar in many respects, the doctrine enunciated in the Freese case is persuasive.

■ The contention which the board here makes that it does not know where the established road is fails to convince because the surveyor who purported to show the obscurities did not employ all of the recorded data. Moreover, the order of the trial court must be construed in the light of the undisputed rule applicable in situations relating to the maintenance of public highways, i. e., mandamus is recognized as a proper remedy to compel public officers to take care of and keep in repair public highways only when the exercise is so apparent and obvious that the refusal to act is the result of a determination not to discharge a plain duty. See 34 Am.Jur. Mandamus § 193; 55 C.J.S. Mandamus § 177; and Annotation, 46 A.L.R. 257. Thereunder, the obligation to work the road depends upon the exercise of sound discretion by the board, considering the best interests of Fremont County as a whole, taking into consideration the extent of the road's anticipated use, its importance in relation to other roads, the practicability of maintenance, and the availability of county finances for that purpose. Had the board which established the road in 1921 or any successor considered the highway impractical or without benefit to the public, there was clear authority for alteration or vacation, § 24–43, W.S.1957.

■ Plaintiffs did not plead that any road existed by prescription and specifically disclaimed any such position in the argument here. Therefore, the trial court did not purport to try title to any property but merely ordered the board to take steps regarding the road which had been established. Defendants' contentions regarding the error of the court in this regard are without merit. Likewise, defendants' argument that there was a failure to demand performance is invalid because the testimony is clear that plaintiffs at different times consulted with the board and request-

ed action to be taken for the removal of the obstructions. This demand was sufficient.

From what we have said, it follows that the order of the trial court must be affirmed. Subsequent interpretations of such order shall be in accord with the views herein expressed.

As we previously noted, Boeseke, Sullivan, and Meyers were made defendants by order of the court. Service was had upon the first two named and they answered. However, no disposition of the cause was made as to them, and the trial court should make clear their present status.

Affirmed.