201 So.2d 510

**BRAGG APARTMENTS, INC.**

v.

**CITY OF MONTGOMERY.**

3 Div. 84.

Supreme Court of Alabama.

June 29, 1967.

Rehearing Denied Aug. 24, 1967.

Jones, Murray & Stewart and Hartwell Davis, Montgomery, for appellant.

Whitesell, Alton & Dement and Walter J. Knabe, Montgomery, for appellee.

GOODWYN, Justice.

Appellant, Bragg Apartments, Inc., filed a bill in the circuit court of Montgomery County, in equity, alleging, as amended, that the City of Montgomery and the State Highway Director, respondents, had wrongfully closed the north end of Lockett Drive, a city street, at its intersection with the Atlanta Highway. The amended bill further alleges that respondents, "without the consent of complainant, entered the property of the complainant upon the right-of-way for said Lockett Drive and the Atlanta Highway * * * and dug and located the south end of an under-pass for pedestrians extending under said highway and terminating on its north end on, to-wit, the public school grounds of Capitol Heights High School."

The bill, as amended, prays for a permanant mandatory injunction directing the respondents to open the north end of Lockett Drive, to close the underpass, and to restore Lockett Drive, as nearly as practicable, to its condition prior to its alleged alterations; a permanent injunction restraining respondents from continuing the blocking, or allowing the blocking, of the north end of Lockett Drive; an award of damages resulting to complainant from the illegal closing of Lockett Drive and the construction of the underpass; and, in the alternative, if it be determined that complainant is not entitled to the injunctions prayed for, that complainant be awarded damages "for permanent infringement on its property rights."

The respondent City filed an answer to the amended bill denying its material allegations and further stating in part, that the City was forced to close Lockett Drive because of the improvements made by the State on the Atlanta Highway.

The State Highway Director was dismissed as a party. No point is made as to this.

There was a hearing before a jury empaneled at complainant's request to determine the amount of damages due complainant, if any. The jury found such damages to be $4,500.

The final decree denied complainant the injunctive relief sought, but accepted the jury's finding of $4,500 as permanent damages in favor of complainant "for the permanent closing of Lockett Drive and for the construction of the pedestrian underpass." Complainant brings this appeal from that decree.

Pursuant to Supreme Court Rule 26, 279 Ala. XXI, XXXIV, and Code 1940, Tit. 7, § 773, the record has been abridged.

The decisive question before us is whether it was error to deny the injunction directing the City to reopen the north entrance of Lockett Drive. Our conclusion is that it was. On oral argument, it was stated on behalf of appellant that no insistence is made with respect to issuing an injunction to close the underpass. However, it is insisted that damages are due as a result of constructing part of the underpass in Lockett Drive.

The facts pertinent to this appeal are as follows:

Bragg Apartments, Inc., a multi-unit apartment development located in the City of Montgomery, is bounded on the north side by the Atlanta Highway which runs in an east-west direction. Atlanta Highway is a city street which is also used by the State as a connecting part of its highway system. Lockett Drive is a one-block long dedicated public street of the City of Montgomery running in a north-south direction through a portion of the Bragg Apartments development with its north end joining the south side of the Atlanta Highway.

On October 16, 1961, the north end of Lockett Drive, where it intersects with the Atlanta Highway, was closed due to a widening and repaving project undertaken on the latter street. As a part of this project, a pedestrian walkway was construct-

ed under the Atlanta Highway. One end of this walkway or underpass is on the grounds of the Capitol Heights Junior High School, north of the highway, where it surfaces, and it then runs south under the highway and surfaces south of the highway on the right-of-way of Lockett Drive. Both of these projects were undertaken by the State Highway Department with the knowledge and consent of the City.

On February 1, 1962, the principal stockholder and president of Bragg Apartments, Inc., complained to the City about the closing of Lockett Drive, but was assured by one of the City Commissioners that the street would be reopened at the completion of the construction project on the Atlanta Highway. However, on April 5, 1962, the City erected a wooden barricade across the north entrance of Lockett Drive which was still there at the time of the trial. On September 18, 1962, the City's Board of Commissioners passed a resolution closing the north entrance of Lockett Drive. No other action was taken by the City or the State Highway Department to effect this closing, nor was any action taken for compensating the affected property owners for damages, if any, sustained by them due to the closing of the street and construction of the underpass.

During the construction and alteration of the Atlanta Highway, the highway was lowered by over a foot, and curbing and guttering and a sidewalk were paved across the north entrance into Lockett Drive. The result was a drop of over a foot where Lockett Drive originally entered the Atlanta Highway.

There was evidence that prior to the actual closing of the street, the principal stockholder and president of Bragg Apartments, Inc., had expressed a desire that Lockett Drive be closed. There was no evidence, however, that he communicated this desire to a representative of the City, nor that such statement was relied on by the City, nor that he thereby intended to forfeit appellant's right to compensation for the closing of the street.

The principal question facing us is whether a city may close a public street without following the statutory procedure set forth in Code 1940, Tit. 56, §§ 26–31. More basic, perhaps, is whether a City may permanently close a public street without pursuing any legal action other than a resolution of the City's governing body.

Section 235 of the Constitution of 1901 provides, in pertinent part, as follows:

"Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction. * * *"

The legislature has provided in Code 1940, Tit. 56, §§ 26–31, noted above, the way in which a municipality may close and vacate a public street. Where there is such a statute, the necessity for strict adherence to its provisions is thus stated by the Annotator in 175 A.L.R. 760, 762:

"While some limitations to its application are to be found, the rule appears to be quite general that where the procedure for the vacation, discontinuance, or alteration of a public street or highway by direct action of public authorities is prescribed by statute, it is necessary to adhere to such procedure in order that the vacation or alteration may be effective; * * *. * * *"

We approve this statement.

The City did not follow the required statutory procedure in this case.

The holding in Lybrand v. Town of Pell City, 260 Ala. 534, 71 So.2d 797, is controlling here. In that case, property owners filed a bill against the Town of Pell City to

enjoin the partial obstruction of a street where the City was building a swimming pool, one corner of which blocked a portion of the street. No steps had been taken by the City to vacate the street or to compensate the affected property owners for possible diminution in the value of their property. This court held that the injunction sought by the complainants should have been granted. It was there said (260 Ala. at 538, 71 So.2d at 801):

> "Furthermore, a conveyance of lots embodied in such a plan passes to the grantee *the fee to the median line of the street encumbered by the easement in favor of the public.* * * * Said fee is not subject to vacation by legislative action *without just compensation being made or provided.* * * * In proceedings instituted by municipalities and counties under the terms of Tit. 56, §§ 26–31, Code of Alabama 1940, to vacate streets, highways, etc., provision is made for compensating those who are injured by such vacation.

> \*   \*   \*   \*   \*   \*

> "When lands have been so dedicated as streets and avenues, the municipality has no power, unless specially authorized by the legislature, to divert them in any manner from the uses to which they were originally dedicated. State ex rel. Attorney General v. Louisville & Nashville R. Co., 158 Ala. 208, 48 So. 391. No such special authorization is present in the instant case. Any encroachment thereon or use thereof which is inconsistent with such purpose will constitute a nuisance which may be enjoined. City of Troy v. Watkins, 201 Ala. 274, 78 So. 50. The obstruction or encroachment may consist in anything which renders the roadway less commodious. City of Troy v. Watkins, supra. Injunction *in such cases* will be awarded without regard to the solvency or insolvency of the parties, or to the fact that adequate damages at law could be recovered. City of Troy v. Watkins, supra; Town of New Decatur

v. Scharfenberg, 147 Ala. 367, 41 So. 1025.

> "It is not pretended that the town had any authority in its charter to use the avenues in the manner it did. Under the authorities, the town's actions were unauthorized and void. City of Troy v. Watkins, supra; State ex rel. Attorney General v. Louisville & Nashville R. Co., supra.

> \*   \*   \*   \*   \*   \*

> "The legislature, representing the sovereign people, may provide for the vacation of portions of public streets, due regard being had for the rights of the landowners concerned. Thetford v. Town of Cloverdale, 217 Ala. 241, 115 So. 165. However, when municipal authorities undertake, without legislative authority, to close portions of public streets and avenues, in which the municipality only has an easement for all time, the power of the courts can be brought to interfere.

> "While the granting or refusing of a temporary injunction is largely discretionary, depending upon the facts of each particular case, the term 'discretion' implies a sound judicial discretion, reviewable on appeal, and not an arbitrary administrative or executive discretion. Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 77 So. 574."

In City of Troy v. Watkins, 201 Ala. 274, 78 So. 50, supra, a property owner brought a bill to enjoin the city from obstructing a street. The lower court overruled respondent's demurrer to the bill and this action was affirmed here. As there stated (201 Ala. at 275, 78 So. at 51):

> "A public highway 'cannot be used in a manner foreign to its dedication, and any encroachment thereon or use thereof which is inconsistent with such purpose will constitute a nuisance which may be enjoined.' * * *

> "A property owner has the right to require the municipality to restore a street

to its former condition, and he may enjoin acts of damage to his property by the municipality where there is an attempt to take or injure his property for public use without compensation in advance. [Town of] New Decatur v. Scharfenberg, 147 Ala. 367, 41 South. 1025, 119 Am.St. Rep. 81.

"A citizen may enjoin a municipality from taking or injuring his property by changing the grade of a street without first making compensation; injunction in such cases will be awarded without regard to the solvency or insolvency of the parties, or to the fact that adequate damages at law could be recovered. * * *"

A part of the underpass was constructed within the right-of-way of Lockett Drive. But no legal action was taken by the city prior to such construction for the purpose of obtaining an enlargement of usage by the City of its easement in the street.

In McGowin v. City of Mobile, 241 Ala. 576, 4 So.2d 161, property owners filed a bill to enjoin the construction of Bankhead Tunnel until the payment of just compensation by the city for the injury or damage to complainants' property. The west entrance to the tunnel was to be built in the center of the street in front of complainants' property. The trial court sustained a demurrer to the bill. On appeal, this court reversed. It was there said:

"'* * * [J]ust compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of "its" works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained some special damage with respect to his property in excess of that sustained by the general public.'

"This is so regardless of whether or not the construction or enlargement of its works, highways or improvement constitutes an additional servitude.

*    *    *    *    *    *

"In the case of McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 So. 153, 154, Chief Justice Anderson said: 'Section 235 of the Constitution of 1901 (section 7, art. 14 of the Constitution of 1875) provides that "municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured or destroyed by the construction or enlargement of its works, highways or improvements," etc. The language used is plain and unambiguous, and requires compensation to the owner, not only of the property taken or destroyed, but for *property injured, as the result* of the construction or enlargement of the works, highways, or improvements. If injury is done to another's property by a corporation or individual invested with the privilege or exercise of the right of eminent domain, whether in acquiring the property for public use or in the enlargement or improvement of the property already acquired, the owner of the adjoining injured property is given a right of action, under our Constitution, notwithstanding he had no such right under the law as it existed previous to the Constitution of 1875.' (Italics supplied.)"

■ Our conclusion from the evidence is that the construction of a part of the underpass within the right-of-way of Lockett Drive was an enlargement of the City's "works, highways, or improvements," within the meaning of § 235 of the Constitution.

The decree appealed from is reversed and the cause is remanded to the trial court for issuance of a mandatory injunction directing the City of Montgomery to reopen the north entrance of Lockett Drive, and for such further proceedings, as the parties

may be advised, for the determination and assessment of any damages which might be due complainant. Issuance of the mandatory injunction may be postponed, at the trial court's discretion, in order to allow time for the City to institute, prosecute, and consummate in due course, proceedings for closing the street and determining the compensation and damages, if any, due complainant.

Reversed and remanded with directions.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.