**William J. ERCANBRACK,
Plaintiff and Appellant,**

v.

**Ralph JUDD and Emma Judd,
Defendants and Respondents.**

**No. 13557.**

Supreme Court of Utah.

July 2, 1974.

J. Harold Call, Heber City, for plaintiff and appellant.

Merlin R. Lybbert, of Worsley, Snow & Christensen, Salt Lake City, for defendants and respondents.

ELLETT, Justice:

This appeal raises the question of whether or not Grass Creek road has been abandoned by Summit County and, if it has not, whether the appellant is entitled to damages.

For many years the Grass Creek road was a public way established by use and not by grant. Plaintiff and defendants own land abutting the road. Plaintiff bought his land in 1965, but his title comes through grantees from his father who for many years owned the land and used the road.

Due to a landslide in the early 1950's and the failure of the county to keep the road in repair, the public departed from the road in places and traveled along an old abandoned railroad right of way. There was no objection by the railroad company to the use being made, and since

this deviation continued for more than ten years, that part of the railroad right of way which was used by the public became the Grass Creek road.[1]

Mr. Judd placed a locked gate across the west end of the road in the year 1951 and gave keys to those who had occasion to use it. In 1958 he and others duly filed a petition with the Summit County Commission to abandon the road. At a formal hearing and after notice given according to law, the commissioners refused to abandon it and declared it to be a public road in Summit County.

On February 7, 1966, Mr. Judd appeared personally before the county commission and requested that the road be abandoned and that he be allowed to restrict the use of the road as he might desire. Without any notice being given to anyone, the commission caused the following minute entry to be made:

Minutes of Summit County Commissioners Meeting held February 7, 1966.

Ralph Judd met with the Commission and requested that the County abandon the Grass Creek road. He stated that the road has had a gate on it and has not been maintained by the County for at least eleven years. Due to this fact, Commissioner Porter made a motion that since the road had not been County maintained for this period of time that Mr. Judd be given permission to put up notice that the road is closed and abandoned. The motion was seconded by Commissioner Durrant and carried.

Mr. Judd thereafter changed the lock on the gate and caused the sheriff of the county to serve the following notice upon Mr. Ercanbrack:

To Junior Erchanbrack [sic], and to Whomsoever Else it May Concern:

Notice is hereby given by and on behalf of Ralph B. Judd and Emma Judd, Coalville, Utah, that any right or privilege which you have, or may have, to use a certain private access road commencing near the mouth of Grass Creek on the East side of the Echo Reservoir, adjacent to the Union Pacific Railroad tracks, in Summit County, Utah, is hereby terminated and withdrawn.

The gate at the entrance to the said private roadway will be forthwith secured, and any interference with the gate, or use, or attempted use, of the said private roadway by you, or anyone acting on your behalf will be prosecuted to the full extent of the law.

Kindly govern yourself accordingly.

Mr. Ercanbrack had the use of another road leading out from his property, but a severe snowstorm caused this road to be impassable, and in order to rescue a small band of his sheep which was snowbound, he undertook to obtain a key from Mr. Judd. When he could not find Mr. Judd, he broke the lock and attempted to rescue his sheep via the Grass Creek road. He was unable to get through the deep snow, and 46 head of his sheep perished. It is for the loss of these sheep that he seeks damages.

The trial court, sitting without a jury, ruled that Summit County abandoned the road sometime prior to 1966 and that the public abandoned it through a non-user for sometime prior thereto. He further found no causation as regards the death of the sheep and gave judgment for the defendants.

Prior to 1963 the law regarding the abandonment of a highway was to be found in Section 27–1–3, U.C.A. 1953, which provided:

All highways once established must continue to be highways until abandoned by order of the board of county commissioners of the county in which they are situated, or other competent authority.

The 1963 Legislature rewrote the highway code and enacted Chapter 39 of the 1963 Session Laws. Section 90 of that chapter and known in our code as 27–12–

1. Section 27–12–89, U.C.A.1953 (Replacement Vol. 3).

90, Utah Code Annotated 1953 (Replacement Vol. 3), states as follows:

> All public highways once established shall continue to be highways until abandoned or vacated by order of the highway authorities having jurisdiction over any such highway, or by other competent authority.

The 1965 Legislature added five new sections without repealing any prior sections, which new sections set forth the procedure by which a county could abandon or vacate a road, to wit, Sections 27–12–102.1, 27–12–102.2, 27–12–102.3, 27–12–102.4, and 27–12–102.5, Utah Code Annotated 1953 (Replacement Vol. 3).

The first of the new sections provides for vacating a road based upon a written petition of a landowner abutting on the road. The second deals with vacating a road without a written petition being filed. The other three sections so far as material read:

> 27–12–102.3. . . . Notice of the intention of the board of county commissioners to vacate any county road, . . . , shall in all cases be given as provided in the next section . . . .

> 27–12–102.4. . . . No county road shall be so vacated, unless notice of the pendency of the petition and prayer thereof, and the date of the hearing thereon, if such petition is filed, or of the intention of the board of county commissioners of the county to vacate, and the date of the hearing on such question if no petition is filed, be given by publishing in a newspaper published or of general circulation in such county once a week for four consecutive weeks preceding action on such petition or intention, or, where no newspaper is published in the county by posting the notice in three public places therein for four consecutive weeks preceding such petition, and by mailing such notice to all owners of record of land abutting the county road proposed to be vacated addressed to the mailing addresses appearing on the rolls of the county assessor of the county wherein said land is located. Action thereon shall take place within three months after the completion of notice.

> 27–12–102.5. . . . The action of the board of county commissioners vacating . . . a county road which has been dedicated to public use by the proprietor, shall operate to the extent to which it is vacated . . . ., upon the effective date of the vacating ordinance, as a revocation of the acceptance thereof, and the relinquishment of the county's fees therein by the board of county commissioners, but the right of way and easements therein, if any, of the property owner and the franchise rights of any public utility shall not be impaired thereby.

■ Since there was no notice given to either the abutting landowners or the general public, the motion of the commissioner as approved was and is a nullity, and the public road will continue to be such until it is abandoned in accordance with the statutes.

It is interesting to note that the plaintiff did not assert his rights as an abutting landowner to use the highway after the purported abandonment by the county[2] but only claimed the right as a member of the public.

■ The evidence was not such as to compel the trial judge to find that it was the locked gate which caused the death of the sheep, and on that phase of the case the judgment is affirmed. As to the holding that Grass Creek road is abandoned, the judgment is reversed. No costs are awarded.

2. 39 Am.Jur.2d, Highways, Streets and Bridges, § 185; Hague v. Mill & Elevator Co., 37 Utah 290, 107 P. 249 (1910); Sowadzki v. Salt Lake County, 36 Utah 127, 104 P. 117 (1909); Annotation in 150 A.L.R. 644.

**598**

CALLISTER, C. J., and CROCKETT, J., concur.

HENRIOD, J., does not participate herein.

TUCKETT, Justice (concurring and dissenting):

I concur in the decision of the majority insofar as it affirms the judgment of the lower court on the question of damages sustained by the plaintiff on his claim for the loss of certain sheep. I respectfully dissent to that portion of the majority decision which reverses the lower court on its determination that the Grass Creek road was not a public way. I particularly object to that portion of the decision which states that:

> Due to a landslide in the early 1950's and the failure of the county to keep the road in repair, the public departed from the road in places and traveled along an old abandoned railroad right of way. There was no objection by the railroad company to the use being made, and since this deviation continued for more than ten years, that part of the railroad right of way which was used by the public became the Grass Creek road.

The record shows and the court found that for approximately 40 years the defendants and their predecessors in interest had leased the right of way from the railroad company, and it thus appears that the railroad had no right to object nor to concur in the use of the right of way by members of the public. The record further shows that segments of the railroad right of way had been improved by defendants and their predecessors to enable them to use it as a private way. Defendants had the right to exclude the public from those segments of the right of way. Even though the defendant Ralph Judd and his father before him permitted others owning property in the area to use that portion of the right of way this does not support the majority's determination that the entire way was public. It should be noted that the majority opinion deals with rights of the railway company even though it was not made a party.