**BOARD OF COUNTY COMMISSIONERS, CARBON COUNTY, State of Wyoming, Appellant (Plaintiff below),**

v.

**Frances WHITE and Clifford White, Appellees (Defendants below).**

**No. 4457.**

Supreme Court of Wyoming.

March 22, 1976.

Oscar A. Hall, Carbon County Atty., and Kenneth W. Keldsen, Deputy Carbon County Atty., Rawlins, for appellant.

T. Michael Golden of Brimmer, MacPherson & Golden, Rawlins, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS, and ROSE, JJ.

### UPON REARGUMENT

GUTHRIE, Chief Justice.

The Board of County Commissioners of Carbon County, appellant herein, filed this suit to enjoin Clifford B. and Frances H. White, appellees herein, from closing a road known as the McFadden-Arlington Road. Appellant sought a preliminary injunction and further asked that appellees be enjoined from obstructing travel over the lands owned by appellees. The trial court, with the assent of the parties, combined for hearing the matters of the preliminary and permanent injunctions and entered judgment adverse to appellant, finding generally against the appellant and specifically finding that the appellees owned the property over which the road passed and that appellant had no right or title thereto. The judgment further allowed appellant 90 days in which to secure rights-of-way, or to pursue other proper proceedings, and provided that during the period the road should not be closed by appellees. It further reserved jurisdiction to make other orders affecting this matter.

In its appeal from this judgment appellant depends upon three propositions stated as follows:

"1. The County of Carbon acquired title by prescription over which the McFadden-Arlington Road traverses by virtue of public use and county maintenance over a period of ten years, actions by the Board of County Commissioners to declare the same as a public road and filing a plat thereof as a matter of public record.

"2. With reference to the land over which the road traverses, Section 33 and

34, Township 20 North, Range 78 West of the 6th P.M. and in the North Half of Section 4, Township 19 North, Range 98 [sic] West of the 6th P.M., the County of Carbon had a right of way easement by virtue of the right of way easement given by Lee E. and Loretta Irene McQuay given in the year 1965 and the Board of County Commissioners did not have authority to quitclaim to the McQuays said right of way easement without complying with the appropriate procedures of notice and hearing.

"3. With reference to all of Section Number 4, Township 19 North, Range 90 [sic] West of the 6th P.M., Mr. Bryan White, predecessor in title to the land involved, by consenting to a change in location of the road in order to accommodate the building of a reservoir by him and the appellees, and making a determination as to where the road should be located constituted a consent to the establishment of a public road over the changed route in accordance with Section 24–50, Wyoming Statutes, 1957."

█ The answer to appellant's first position lies in *Nixon v. Edwards*, 72 Wyo. 274, 264 P.2d 287, and *Rocky Mountain Sheep Co. v. Board of County Com'rs of Carbon County*, 73 Wyo. 11, 269 P.2d 314. In *Nixon*, Justice Blume—in a thoughtful opinion, which must be interpreted as an effort to clarify the effect of what is now § 24–1, W.S.1957, C.1967, 1975 Cum.Supp., and related statutes—set out the holding that prescriptive use is not sufficient to establish a public or county road and that this must be established by legal authority. This holding is reinforced in the case of *Rocky Mountain Sheep Co.*, with the comment upon the plain language in *Nixon*, 269 P.2d at 320. This last case further closes the door to claims of legal title arising by prescriptive use without proper lawful establishment proceedings of the claimed road. *Rocky Mountain* also held that the county commissioners must comply

with § 48–322, W.C.S.1945, 1957 Cum. Supp., which was amended and now appears as § 24–60, W.S.1957, C.1967, in order to effect the establishment of a public road. As will be evidenced from an examination of § 24–60, requirements were added to the section as it originally stood, evidencing legislative concern that there be a complete and specific proceeding when lands were sought to be taken for public roads. It is to be noted that this section provides that the board may hear testimony and does provide that damages, if any, be assessed and immediately paid to the persons entitled thereto or deposited with the county clerk for the use of the landowner. It provides for the right of entry only "when the road has been established" and the award paid. It further provides for the recording of a certificate to be executed by the chairman of the board and indexed in the same manner as if it were a conveyance of the right-of-way. None of these things were done in either of these two incomplete proceedings. We see no reason to depart from nor to modify what appears to be the clear and workable rules enunciated in these two cases, and to recognize and create exceptions thereto would destroy clarity and would be a disservice to the law. *George W. Condon Co. v. Board of County Com'rs of Natrona County*, 56 Wyo. 38, 103 P.2d 401, 407, also suggests the significance of the failure of the board to make a formal order to establish such road. The proceedings had in 1960 and in 1963 [1] both evidence the fact that the board contemplated further proceedings to be had and were not viewed as having been completed when further hearings were mentioned. It may well be inferred that appellant here tacitly admitted the ineffectiveness of the 1960 proceedings when it reinstituted the proceedings in 1963, but the writer is unable to find any substantial difference between these proceedings in the record, which indicates particularly the failure of the board to make a disposal by

---

1. See addendum.

providing as follows at its August 6, 1963 meeting:

"A claim for damages was received from Bryan White who met with the board. It was decided that no further action would be taken at this meeting pending further investigation of possible changes in survey and width of proposed road."

and no further board action appears. To countenance this behavior as granting to the county any right in this road would be both unfair and inequitable because of the clear inference that the proceedings are not completed. The board cannot lull the landowner into believing the proceedings are still pending and in its failure to make a final determination cannot deprive the landowner of any right of appeal. Objections to public roads or claims for damages cannot be handled in the manner that if you turn your head they will go away. The fact is that Bryan White, or anyone reading these minutes, would be forced to infer that the board had not completed its proceedings.

The trial court was in error, however, in holding that appellant had "no legal or equitable right, title or interest" in or to the lands covered by that instrument entitled "Right-of-Way Easement" executed by Lee E. and Loretta Irene McQuay on June 23, 1965, and recorded in the office of the county clerk June 24, 1965, which conveyed an easement to Carbon County. Since the McQuays were the then owners of the lands across which this easement was granted, the Board of County Commissioners of Carbon County (having accepted and recorded the same) had no right or authority to reconvey this right-of-way or to surrender the public's right thereunder by virtue of the quitclaim deed dated June 4, 1968. It seems evident that the traveling public has a vested right to the use of public roads, and earlier this court recognized such right in the public and that a road could not be vacated except by official act of the board of county commissioners, *Board of Com'rs of Sheridan County v. Patrick*, 18 Wyo. 130, 104 P.

531, 532, rehearing denied 107 P. 748. Although the board is given very general powers to manage and control county roads, § 24–5, W.S.1957, this must be exercised in a lawful manner and the statutes governing the actions of the board with reference thereto must be construed in pari materia. Section 24–43, W.S.1957, has since its enactment provided the procedure "for the establishment, vacation or alteration" of county roads, and the significant portion thereof is as follows:

"* * * The course and the point of termination of said road to be established, altered or *vacated*, as the case may be, and thereafter following out the provisions of article 2, chapter 52, Wyoming Revised Statutes, 1931, not inconsistent therewith." (Emphasis supplied.)

Section 24–52, W.S.1957, C.1967, was included in Art. 2, Ch. 52 of the 1931 Revised Statutes therein mentioned and is the principal procedural statute contained therein. Although this section itself omits any reference to vacation, any such proposed vacation must proceed with proper notice to those interested, including the traveling public in this instance. This court has earlier suggested that the provisions of this section be utilized to alter or vacate such roads, *Board of County Commissioners of County of Fremont v. State*, Wyo., 369 P.2d 537, 542. In the instant case once there was a dedication to the public use by the McQuays' grant of an easement, its acceptance and recording by this board, and general use by the public, this road had been established.

We consider the case of *Board of County Commissioners of County of Fremont v. State*, Wyo., 369 P.2d 537, quite persuasive in this matter; and although it involved a mandamus application, in that case the court held that absent any proper vacation a writ would lie to compel the county commissioners to keep an established road open and remove from the right-of-way any fences or obstructions. There is, however, other abundant authority applicable to this case, as exemplified by

the annotations appearing in 175 A.L.R. 760, and particularly pp. 762 and 765, which set out the rule as follows:

"While some limitations to its application are to be found, the rule appears to be quite general that where the procedure for the vacation, discontinuance or alteration of a public street or highway by direct action of public authorities is prescribed by statute, it is necessary to adhere to such procedure in order that the vacation or alteration may be effective; such a result may not be accomplished by contract (see infra, § 3) nor are the public authorities precluded by principles of estoppel from denying the termination of the existence, or alteration, of the public way in the absence of substantial compliance with the statutory procedure. This is evidenced by the many cases in which it is stated, either expressly or by strong implication, that such procedure is exclusive, or that it must be strictly followed." (p. 762)

"Applying the rule that the procedure prescribed by statute for vacating, discontinuing, or relocating streets or highways must be substantially followed in order to terminate the existence, or change the route, of a public way, the courts in a number of cases have held or recognized that the execution of a contract or agreement contemplating such a termination or change was ineffectual to obtain such a result, where the statute had not been complied with." (p. 765)

See also 39 C.J.S. Highways, §§ 117 and 118, pp. 1053 and 1054.[2]

A case bearing considerable similarity to our instant problem is *San Diego County v. California Water & Telephone Co.*, 30 Cal.2d 817, 186 P.2d 124, 175 A.L.R. 747, involving an action by the county to enjoin the flooding of a county road because of

impounding of water in a reservoir. The defendant claimed, and it was a fact, that the county had entered into agreements with the defendant whereby the defendants granted temporary rights-of-way to the county for roads to circumvent the area to be flooded and the county waived any damages to it resulting from the flooding. The court, 186 P.2d at 128–129, determined that the cases are uniform that:

"* * * if the Legislature has provided a method by which a county or city may abandon or vacate roads, that method is exclusive. [Citing cases.] An analogous line of decisions holds that a municipality must follow the statutory procedure prescribed for the sale of public property, and an attempt to dispose of the property by contract will not be enforced. [Citing cases.] * * * Specifically, it has been held that an agreement by local officials to abandon, vacate, or sell a road is void. [Citing cases.] * * *."

The California court held that the county was not estopped by its agreements and the doctrine of estoppel cannot be invoked where the statutory procedure is the measure of the power to act, particularly where it would operate to defeat the effective operation of a policy adopted to protect the public. The various statutory procedures exist to protect citizens and taxpayers from the loss of its property.

Another case of interest is *Ercanbrack v. Judd*, Utah, 524 P.2d 595. There the county commissioners entered upon their records the fact that an established county road was abandoned and gave permission to a landowner to put up a notice that the road was closed. The landowner did so and placed a gate and lock to prevent access. Under very similar statutes

---

2. *In re Petition of Lillian W. Mattison*, 120 Vt. 459, 144 A.2d 778; *Roberts v. Pace*, 230 Ark. 280, 322 S.W.2d 75; *Peers v. Cox*, Ky. App., 356 S.W.2d 768; *Lamartiniere v. Daigrepont*, La.App., 168 So.2d 373; *Park District City of Fargo v. City of Fargo*, No.Dak., 129 N.W.2d 828; *Arlington Heights National Bank v. Village of Arlington Heights*, 33 Ill.2d 557, 213 N.E.2d 264; *Bragg Apartments, Inc., v. City of Montgomery*, 281 Ala. 253, 201 So.2d 510.

that court summarized succinctly the rule, 524 P.2d at 597:

> "Since there was no notice given to either the abutting landowners or the general public, the motion of the commissioner as approved was and is a nullity, and the public road will continue to be such until it is abandoned in accordance with the statutes."

We hold that the agreements of June 4, 1968, and May 25, 1971, are null and void as an attempt to vacate an established county road by methods other than those by statute provided. We further hold that any deed to the McQuay lands, executed by the county commissioners to the appellees, is of no force and effect.

 There is little force in appellant's last contention because the record definitely shows that when White in 1968 determined to build a reservoir which would flood certain portions of the road, a part of which at least lay within the boundaries of the right-of-way easement, he made a proposal to the board of commissioners that for a term of not to exceed four years or until Interstate 80 be constructed the county could build a road around the water which would extend over the then county road at a mutually agreeable location. The board accepted such proposal on June 4, 1968. On May 25, 1971, in contemplation of the expiration of the earlier permission, Bryan White again submitted to the commissioners a proposal, reciting among other things that:

> " * * * It is understood and agreed that said Interstate 80 has now been constructed and the heretofore right-of-way easement for road purposes has terminated. That by reason of said termination the undersigned, Bryan White, has closed said right-of-way and road to said public at large. That the undersigned Bryan White does hereby agree to reinstate said right-of-way easement for road purposes only across the hereinafter described lands until project SC–CSM–6–13 (McFadden-Arlington Road) in

Carbon County, Wyoming, is completed or until January 1, 1974, whichever period of time is shorter. In consideration thereof, the undersigned, agrees to open said road forthwith so that Carbon County, Wyoming, can enter and make certain improvements to said road for the benefit of the traveling public. It is agreed upon the part of Carbon County, Wyoming, that any and all improvements to said road shall revert to and become the property of the land owner upon the termination of this right-of-way easement as described aforesaid. And it is further agreed that the instrument executed June 4, 1968 by the parties hereto is made a part hereof and a photo copy of the same is attached to this instrument. * * * "

It is upon this basis that appellant has asserted its third claim, which falls from its own weight by its clear recognition of the temporary status thereof and indicates quite the contrary to appellant's contentions. The temporary status of this arrangement was also recognized in the testimony of Korkow, a road supervisor employed by the Carbon County Road and Bridge Department. It is to be remembered, however, we do not find that these agreements in any manner operate to deprive the county of its claim and interest in and to the lands covered by the original McQuay easement for public use. We are unable to understand why appellant has since 1960 temporized in this matter and failed to complete any proper proceedings which would establish this as a public road. If the so-called McFadden-Arlington Road is necessary and should be established for the public use, the board of commissioners should proceed to institute and complete the necessary proceedings to effect that purpose. We hold the proceedings of 1960 and 1963 abandoned by the intervening conduct of the parties and the passage of time. Any claim of prescriptive right must be made in any new proceeding for the establishment of the road, as must the appellees' claim for damages.

The case is therefore remanded to the district court with directions to correct its finding that appellant has no right, title or claim in or to the lands and the road covered by the right-of-way easement executed by the McQuays and to enjoin the appellees from in any manner interfering with the public use thereof.

The judgment of the district court is affirmed insofar as it holds that the appellees are the owners of the land traversed by the road where it crosses the lands of the appellees in the S ½ of Section 4, Township 19 North, Range 78 West, Carbon County, Wyoming, acquired in 1956, subject to whatever claims the appellant has for road purposes, which we do not here decide.

The judgment is affirmed as to all the remaining portions.

Remanded with directions to modify the judgment in conformity herewith.

ROSE, Justice (specially concurring).

I concur in the result reached here but I take issue with one thought, which, to me, conveys a meaning and inference which, within itself, is anomalous and serves to dull the clarity and preciseness of the opinion. Indeed, it may mislead those who would rely on it.

I have reference to the following sentence:

". . . Any claim of prescriptive right must be made in any new proceeding for the establishment of the road, as must the appellees' claim for damages . . ."

The opinion has previously and properly made the following observation:

". . . prescriptive use is not sufficient to establish a public or county road and that this must be established by legal authority . . ."

Referring to *Rocky Mountain Sheep Co. v. Board of County Com'rs of Carbon County,* 73 Wyo. 11, 269 P.2d 314, at 320, the opinion says:

". . . This last case further closes the door to claims of legal title arising by prescriptive use without proper lawful establishment proceedings of the claimed road . . ."

My problem arises when I attempt to correlate the holding to the effect that prescriptive use

". . . is not sufficient to establish a public or county road . . . without proper lawful establishment proceedings of the claimed road . . . ,"

with the inference that prescriptive acquisition might, nevertheless, be possible in a proceeding where the landowner makes a claim for damages. I cannot understand the thought.

Justice Harnsberger spoke to the subject of county road acquisition by prescription as compared to statutory acquisition which contemplates the payment of damages, when he said in *Rocky Mountain Sheep Co. v. Board of County Comr's,* supra, at page 319 of 269 P.2d:

"So, also, if a board of county commissioners relies upon the county's having obtained prescriptive title to lands within a right of way, or any part thereof, *in order to avoid the payment of damage* for their taking, the inception of such prescriptive title must be evidenced by more formal acts than the user of the road by the public or by the county's construction and maintenance of the road because, in order to be empowered to acquire such prescriptive title, the records of the county must show not only the survey plat of the road but also the proceedings of the board in relation to the road's location, establishment or alteration, thus making manifest the county's purpose to acquire the lands involved." (Emphasis supplied.)

It is my understanding that prescription forecloses the concept of the payment of damages and a proceeding which contemplates the payment of damages is alien to acquisition by prescription.

I would have deleted the questioned sentence.

ADDENDUM

"October 5th, 1960

\* \* \* \* \* \*

"MC FADDEN–ARLINGTON ROAD:

"A motion was made by Patton, seconded by Orton and carried whereby the Board decided to locate a road to be known as McFadden-Arlington Road and ordered the following location to be published in the Rawlins Daily Times.

"*NOTICE OF LOCATION OF PUBLIC ROAD*

"TO WHOM IT MAY CONCERN: The Board of County Commissioners of Carbon County, Wyoming, have decided to locate a road to be known as the McFadden-Arlington Road.

"Commencing at a point 30 ft. north of the SE Corner of the NW ¼ SE ¼, Section 34, T. 20 N. R. 78 W., 6th P.M.; thence westerly to a point 30 ft. north and 60 ft. west of the SW corner of the NE ¼ SW ¼, said Sec. 34; thence southwesterly across said Section 34 and Section 33, said Township and Range to a point 1210′ west of the SE Corner of said Section 33; thence southwesterly across Sections 4, 5, 8, 17, 18 and 19, to a point 150′ north of the S.W. Corner of Section 19 all in Township 19 N. R. 78 W., being 6.14 miles more or less.

"Right of Way to be 60′ wide—30′ each side of above described center line.

"The proposed location and width of right of way required are set forth in detail on a map on file with the County Clerk and may be examined at his office.

"Any land owner or interested party desiring to raise any question with respect to the necessity of the taking of the land for road purposes shall do so by filing, within thirty days after the last publication of this notice a petition in the District Court of the county in which the land is located. If no petition to raise the question of necessity is filed within the said thirty day period, the necessity shall be presumed and the question cannot later be raised.

"All other objections thereto or claims for damages by reason thereof must be filed in writing with the County Clerk of said County before noon on the 7th day of December, 1960, or such road will be established without reference to such objections or claims for damages.

"/s/ R. G. ENGSTROM,
COUNTY CLERK

"Dated Oct. 5, 1960, Pub. 10, 12, 19, 26, 1960.

"There being no further business the meeting was adjourned."

PLAINTIFF'S EXHIBIT 1

"December 6, 1960

\* \* \* \* \* \*

"MC FADDEN–ARLINGTON ROAD.

"On October 12, 16 and 26, 1960 a Notice of Location of Public Road was advertised in the Rawlins Daily Times. An objection and claim for damages was received from Bryan White. A motion was made by Patton, seconded by Orton and carried whereby further action was postponed until the regular meeting to be held January 4th, 1961.

\* \* \* \* \* \*

"There being no further business the meeting was adjourned."

(Duly published.)

PLAINTIFF'S EXHIBIT 8

"July 3, 1963 The Board resumed its session, all members present.

\* \* \* \* \* \*

"NOTICE OF LOCATION OF PUBLIC ROAD

"McFADDEN–ARLINGTON
COUNTY ROAD NUM-
BER 5

"The Board of County Commissioners of Carbon County, Wyoming, have decided to locate a road to be known as McFADDEN–ARLINGTON COUNTY ROAD NUMBER 5.

"Commencing at a point in section 34, T. 20 N., R. 78 W. and traverses southwester-

ly through sections 34 & 33 T. 20 N., R. 78 W.; sections 4, 5, 8, 18 & 19 T. 19 N., R. 78 W.; and sections 22, 23, 24, 27, & 28 T. 19 N., R. 79 W. terminating at a point which is on the Boundary of the Medicine Bow National Forest in section 28, T. 19 N., R. 79 W. The right of way shall be one hundred (100) feet in width, being fifty (50) feet right and fifty (50) feet left of the centerline. The approximate length 10.42 miles more or less.

"The proposed location and width of right of way required are set forth in detail on a map on file with the County Clerk and may be examined at his office.

"Any land owner or interested party desiring to raise any question with respect to the necessity of the taking of the land for road purposes shall do so by filing, within thirty days after the last publication of this notice, a petition in the District Court of the county in which the land is located. If no petition to raise the question of necessity is filed within the said thirty day period, the necessity shall be presumed and the question cannot later be raised.

"All other objections thereto or claims for damages by reason thereof must be filed in writing with the County Clerk of said county before noon on the 6th day of August, A. D., 1963, or such road will be established without reference to such objections or claims for damages.

"There being no further business, the Board adjourned until July 22, 1963 when they will meet to adopt the 1963–1964 budgets for various County municipalities." (Pub.: July 10, 17, 24, 1963.)

PLAINTIFF'S EXHIBIT 9

"August 6, 1963

\* \* \* \* \* \*

"McFADDEN–ARLINGTON COUNTY ROAD No. 5

"In compliance with Notice of Location of the above described public road, protests and claims for damages were received until noon on August 6, 1963.

"A letter was received from Thomas M. Burns, Attorney for the Anschutz Oil Co., Denver, Colorado that they would not consent to taking any part of this land without compensation.

"A claim for damages was received from Bryan White who met with the Board. It was decided that no further action would be taken at this meeting, pending further investigation of possible changes in survey and width of proposed road."

(Duly published.)

PLAINTIFF'S EXHIBIT 14